RUSH et ux. v. FIRST NAT. BANK OF AMARILLO et al.

(Court of Civil Appeals of Texas. Amarillo. July 5, 1913. Rehearing Denied Nov. 1, 1913.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR.

Where a verdict embodies several matters which are assigned as error, an appropriate proposition singling out a particular matter as erroneous sufficiently raises the question for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. PARTNERSHIP (§ 15*)—REAL ESTATE TRANSACTIONS.

A partnership may be formed for carrying out a single transaction in land, as by buying or selling a single tract for profit.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 2; Dec. Dig. § 15.*]

3. PARTNERSHIP (§ 20*)—CONTRACT.

An express or implied contract is necessary to constitute a partnership between the parties for carrying out a land transaction, and the intention of the parties to form such contract is to be determined from the evidence.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. § 20.*]

4. PARTNERSHIP (§ 22*) — CONTRACTS — ELEMENTS—"PARTNERSHIP CONTRACT."

To constitute a partnership contract, competency of the parties, consideration, the subject-matter, and the meeting of the minds of the parties are essential elements, as in case of other contracts.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 1, 7, 8; Dec. Dig. § 22.*]

5. PARTNERSHIP (§ 71*)—PARTNERSHIP CONTRACT—CONSTRUCTION.

A written contract of partnership, though not ambiguous, should be considered, in view of the circumstances surrounding its execution and the subsequent acts of the parties, to discover their intention.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 115, 116; Dec. Dig. § 71.*]

6. PARTNERSHIP (§ 336*) — ACTIONS — SUFFICIENCY OF EVIDENCE.

In an action by a bank on a note for $12,000, executed by defendant to it, secured by a pledge of vendor's lien notes, in which another intervened praying for an accounting under a partnership contract with defendant, evidence held to sustain a finding that the $12,000 note was to cover an amount advanced by the intervener for the purchase of the partnership land and, as between defendant and intervener, discharged such advance.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. § 336.*]

7. PAYMENT (§ 17*)—NOTE OF DEBTOR—MERGER OF DEBT.

While, for proper equitable reasons, a case may arise between a creditor and debtor in which the creditor is permitted to revive an open account by a note, ordinarily, where a note is executed for a debt of lesser dignity, such debt is merged into the note.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 31–33; Dec. Dig. § 17.*]

8. PARTNERSHIP (§ 74*)—DISSOLUTION.

If a secured note and mortgage executed by one partner to a bank was intended to cover and discharge an amount paid by the intervener, the other partner, for the purchase of partnership lands, with the intention that the maker of the note should assume sole liability to the bank, the intervener's previous partnership agreement to furnish the capital to buy the partnership land was thereby canceled.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 119; Dec. Dig. § 74.*]

9. PARTNERSHIP (§ 329*) — ACCOUNTING—ACTIONS—JURY QUESTION.

In an action by a bank on a note executed by defendant, in which another intervened praying for a partnership accounting under an alleged partnership contract for dealing in land, where it was claimed that the note executed to the bank was intended to take the place of the amount to be advanced by intervener for purchasing the land, whether there was a waiver of intervener's agreement to contribute to purchase the lands held not determinable as a matter of law under the evidence.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 782–786; Dec. Dig. § 329.*]

10. PARTNERSHIP (§ 26*)—OFFICES—UNLAWFUL AGREEMENTS.

The fact that intervener, who formed a partnership with the defendant for land and cattle transactions and agreed to advance the capital, was president of the bank which made the loans for that purpose would not make the partnership agreement illegal, though some of the bank directors did not know that the intervener was a partner and that certain overdrafts bore 6 per cent. interest.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 12; Dec. Dig. § 26.*]

11. CHATTEL MORTGAGES (§ 288*)—FORECLOSURE — APPLICATION OF PROCEEDS — UNSECURED DEBTS.

The proceeds of the sale of property mortgaged to a bank to secure a note could not, without the debtor's consent, be applied to the payment of another of his debts, not secured by the mortgage, and the debtor's consent to so apply such proceeds cannot be presumed.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 577, 578; Dec. Dig. § 288.*]

**12. PARTNERSHIP (§ 183\*) — APPLICATION OF PARTNERSHIP ASSETS—PAYMENT OF DEBTS.**

The proceeds of vendor's lien notes, taken in payment for partnership land sold and indorsed by defendant at the request of his copartner, which were pledged to a bank to secure the partnership account, carried in the name of the defendant, as well as the defendant's individual overdraft, should be applied first to the amount due the bank by the partnership and to defendant's individual indebtedness to the bank, if it has a lien therefor, and the remainder of the proceeds divided between the partners according to their interests, and defendant should not be charged with the face value of the vendor's lien notes for the purpose of giving his partner profits under the partnership transaction, nor should the other partner be charged with the value of the property sold.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 312, 319–336, 348; Dec. Dig. § 183.\*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by the First National Bank of Amarillo against J. W. Rush, in which W. H. Fuqua intervened. From a judgment for the bank and for intervener against defendant, defendant appeals. Reversed, and remanded for new trial.

See, also, 159 S. W. 466.

H. H. Cooper, of Amarillo, J. A. Stanford, of Waco, and L. C. McBride, of Dallas, for appellant. Madden, Trulove & Kimbrough, of Amarillo, and Reeder & Dooley, of Amarillo, for appellees.

HENDRICKS, J. In this cause appellee the First National Bank of Amarillo was the plaintiff in the trial court and the appellant, J. W. Rush, was the defendant, and W. H. Fuqua, the other appellee, was the intervener.

The appellee bank sought judgment against appellant, Rush, on a note for $12,000 executed the 26th day of March, 1906, providing for 10 per cent. interest and the usual 10 per cent. attorneys' fees, and also for the foreclosure of a lien upon what is designated in this suit as the Gid Jowell notes, six in number, amounting in the aggregate to $20,000, and which constituted a vendor's lien upon 200 acres of land. A sufficient narrative of the issues as disclosed by the record in this case suggests the theory of Fuqua, the intervener, of a copartnership in writing, as well as supplemented by oral understanding for the purpose of dealing in cattle, by the terms of which Fuqua was to furnish the money and the capital stock, or procure the same to be furnished, for the purpose of purchasing said cattle, and Rush was to contribute his labor in taking care of the same and to furnish pasturage and forage for their maintenance; any additional moneys for the purpose of purchasing additional feed necessary for the maintenance of said cattle was to be furnished by the partnership, all of which was without interest; the profits over and above the capital stock contributed by Fuqua, exclusive of the interest upon the money, which was to be free to the said Rush, were to be equally divided by the partnerships. The defendant, Rush, appellant in this court, contends that as to the cattle and land transaction, the latter more fully discussed in a subsequent part of this opinion, no partnership existed between them and resisted an accounting asserted by the intervener, Fuqua, principally upon that ground, as well as upon the proposition that if a partnership did exist as to either transaction, it having been contemplated that the money, for the purpose of financing each of the enterprises, was to be procured from the First National Bank by Mr. Fuqua, who was at all the times indicated herein the president of the bank, the contracts of partnership were void on account of the alleged inconsistent positions assumed by Fuqua. The trial court, upon the development of the case, peremptorily instructed a verdict in favor of intervener, Fuqua, against Rush, for a certain amount, in favor of the plaintiff bank against Fuqua for a certain amount, based upon certain interest charges and a balance upon the $12,000 note. The verdict against Rush in favor of intervener, Fuqua, was based upon an adjustment of the partnership accounts between them for ascertained profits. The evidence shows that appellant, Rush, both as to the land and the cattle transactions, drew upon the appellee bank by personal checks, and the account against him upon segregation indicates a large personal overdraft, disconnected however, from said land and cattle transactions.

The appellant Rush, assigned error, challenging the correctness of the following portion of the instructed verdict: "We therefore find for the plaintiff bank against the defendant, J. W. Rush, in the sum of $10,890.36, with foreclosure of the Gid Jowell notes as first lien, and we also find in favor of the intervener, W. H. Fuqua, against defendant, J. W. Rush, for $11,957.59, to be satisfied out of the Gid Jowell notes, except the sum of $2,881.25, for which we find for intervener against defendant absolutely, with foreclosure on said notes, subject to prior lien of plaintiff"—and by the third proposition under. this assignment appellant assails the particular part of the portion of the instructed verdict indicated above against the defendant Rush for the foreclosure of the lien on the Gid Jowell notes to pay the amount ($10,890.36) "on open account (as shown in preceding proposition) for the reason that there was no testimony that said notes had been hypothecated as security for said account but only as security for the note sued upon." The instructed verdict upon the face of it, after deducting the deposit of $2,500 of November 8, 1906, is clearly upon the personal account of Rush, which the auditor's report shows is disconnected from expenditures with reference to the land and

---

\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cattle transaction. The appellee attempts to escape this by saying that because the court figured the whole amount of the note and rendered judgment against Fuqua for a balance upon said note, after deducting the sum of $10,890.36, represented by open account, and because the judgment for this amount of $10,890.36 being the amount remaining after deducting the judgment rendered against Fuqua, and being the same amount in the note after the deduction is made from the whole amount of the note, it is in reality a verdict and judgment upon the note, and, if so, the foreclosure of the pledgee's lien upon the Gid Jowell notes is proper. At the time the note was executed, it was secured by deed of trust upon a section of land regarded by the court as partnership property and 440 acres out of the section owned by Mrs. Rush. This deed of trust was released as against the alleged partnership section, and the Gid Jowell vendor lien notes represented the purchase price of a part of said land, executed to Rush and indorsed by Rush to Fuqua or the bank in lieu of the former lien upon the land. Discarding the reasoning in a circle, which might be indulged in, by treating the amount as to the open account as being equal to the same amount in the note, the judgment and verdict is for an amount which would bear interest at 6 per cent., and the features of the express contract itself (that is, the note), while the amounts may be the same, is not adjudged by the court or found by the jury, except as an incident to the real amount found and decreed. The note is an express contract, and the open account is an implied one. The bank alleged the lien against the 'Gid Jowell notes as security to the express obligation, not as security to a personal overdraft. If you balance $10,890.36, the amount evidenced by an implied contract, against the same amount in an express contract and obtain judgment for that amount, which amount did you obtain judgment upon? Appellee says it is form and not substance to say that the judgment is not upon the note; the reply in equation to that is that it may be form and not substance to say that the judgment is upon the note and not upon the account. The instructed verdict shows that the court peremptorily instructed for the amount of the defendant's personal overdrafts, with 6 per cent. interest on each item from its date, after deducting the deposit of $2,500, and directed the jury to find for the plaintiff bank against the defendant, J. W. Rush, in the sum of this $10,890.36, with foreclosure on said notes as first lien. This judgment should never have been rendered in this shape. Appellee may answer, "What difference does it make?" It may make considerable difference. This was resolved into an equitable proceeding in the nature of an accounting, and upon the very face of the verdict, even assuming that the amount of the open account and the amount in this note

is the same, the verdict is split 'as to the amounts, even if evidenced by the note; part is a judgment against Fuqua and part against Rush. It does not make any difference how much you figure results; this is not proper. On account of the security, if Fuqua is obligated upon the note, judgment rendered against him in part and judgment rendered against Rush for an amount in the note may not work out equitably in all the ramifications of this case, and judgment should have been rendered against both as a whole.

[1] There is no complaint in the brief against the assignment of error raising this question, and upon the decisions of the Supreme Court, where a verdict or a charge embodies several matters which are assigned as error and there is an appropriate proposition singling out a particular matter, and complaining of the same, from said verdict or charge, it is sufficient to raise the question.

There could have been a hypercritical objection made to the statement, which is not however made, that the statement under this proposition does not purport to show the finding of the jury was upon an open account and upon which the judgment was rendered. However, the statement under the immediate preceding proposition referred to by the particular proposition we sustain does purport to show it by pointing to the record.

The appellant suggests fundamental error in a supplemental brief, broadening the question that the foreclosure upon the Gid Jowell notes as security for the open account is neither pleaded nor proved. A careful reading of the pleadings we believe sustains this statement, and under the decision of Bank v. Weems, 69 Tex. 501, there is no banker's lien asserted by said pleading; and under the case of Bean v. Lyons, 47 Tex. 19, we are inclined to think that, if it were attempted to be justified on the ground of the foreclosure of a banker's lien, the lack of pleading in this respect is fundamental error. However, we are clear that the error is assigned, as indicated in the discussion under the ninth assignment, as a matter of foreclosure of the pledgee's lien to secure the open account.

With reference to the issue of partnership relative to the land transaction between intervener, Fuqua, and defendant, J. W. Rush, the trial court, upon that issue, peremptorily instructed the jury that the parties were partners. There is a question raised by the intervener appellee that the denial of partnership on the part of the appellant is not sufficient under the law. Although the denial may not be a specific one, under the terms of the statute, which should always be followed, however, after a recitation with reference to the written contract of partnership, there is an averment of noncompliance of an element which we hold in this opinion is a precedent condition to the formation of a partnership (that is, the payment of the con-

sideration), and the further allegation that the said Rush never in fact became a partner with intervener, Fuqua, and having to reverse the case upon properly assigned error, and which in another form also appears to be fundamental, we think it incumbent upon us to discuss the questions as a matter of direction to the trial court.

One Adair was the owner of this land in 1906, which was situated adjoining the town of Tulia, in Swisher county, Tex., and which was under lease to the defendant, Rush, with the privilege of a preference right to purchase; and Rush, apprehensive of the purchase of said land by others, discussed the matter with the intervener, Fuqua, and, disregarding preliminary negotiations, they orally agreed that Fuqua would furnish the money to purchase the section (Rush to take the title to the land in his name and to handle the property for the purpose of sale to others), and when sold Fuqua was to enjoy two-thirds of the profits, Rush one-third, with a reimbursement to Fuqua of the purchase money, without interest on such advancements to Rush. At this stage of the transaction, on the 8th of March, 1906, Rush gave a check upon the First National Bank of Amarillo, for the sum of $960, to the owner of the land, which represented forfeit money and also a one-tenth of the purchase price of the property. Upon the 24th of March, 1906, as a consummation of the previous oral negotiations between the parties, they executed in duplicate, each retaining a copy, the following written agreement, omitting the formal parts: "This memorandum of agreement, made and entered into by and between W. H. Fuqua of Potter county, Texas, and J. W. Rush of Swisher county, Texas, witnesseth: That the said J. W. Rush has purchased a certain section of land, situated in Swisher county, Texas, and described as follows: Being section No. 27, block W1, in Swisher county, Texas, being the section of land just east of the town of Tulia, Swisher county, Texas, for the consideration of $9,600 cash; and the said W. H. Fuqua has paid said $9,600, being the purchase price of said land, for the said Rush. In consideration of the premises, the said Rush is to handle said section of land and to dispose of the same to the best advantage possible and is to pay the said Fuqua back the $9,600 so paid by him as above set out, without interest, and is to further pay the said Fuqua two-thirds of all the profits made on said section of land over and above the said $9,600 paid for same, as aforesaid; the said Rush to have and be entitled to the other one-third of the profits made on said land, if any. The said Fuqua hereby agrees not to charge any interest on the $9,600 advanced by him to the said Rush and invested in the above-described lands, but is to have, when said lands are sold, the said $9,600 back, together with two-thirds of the profits on the same. We, the said W. H. Fuqua and J. W. Rush, hereby bind ourselves, our heirs, executors and administrators, to carry out the terms of this contract."

Of course the instrument on its face clearly presents a partnership, but as to this immediate transaction, taken in connection with the additional execution of the promissory note for the sum of $12,000 and the additional security and the subsequent acts of the parties, a diversity of issue arises between them from this time as to whether this land partnership exists, and, as to some essential matters subsequent to this time, the testimony is irreconcilable. After the date of the execution of this written contract, we find nothing in this record of any discussion of any note with additional security by Rush. It is clear the execution of the $12,000 note, dated the same day of the contract, and the mortgage upon the two tracts of land were agreed upon that date, Mr. Rush asserting that, at the time the written contract was executed, nothing was said in regard to these matters but that said contract was signed and delivered between the parties, each retaining a copy, and that he left the bank, and that upon the same day, after returning to the bank, Mr. Fuqua stated to him that, after studying about the matter, he (Rush) had better make a note to the bank for the money, and to make it for $12,000 and to execute a deed of trust upon this section and a section of land adjoining; that he (Rush) informed Fuqua that the adjoining section belonged to his wife, she having purchased it with her separate property; that Fuqua then requested that both he and wife sign the note and mortgage and record the mortgage in Swisher county, where Rush was at that time living, and return the papers to him, which was done. He further says that, when the note and mortgage were agreed upon, Fuqua suggested that he sell the land as quickly as he could or the comptroller would get after them. The statements of Fuqua, supporting his theory, and the inferences which could be drawn, are in substance that Rush knew that it was contemplated that the latter was to furnish the money or to procure it from the bank, and that the execution of the note and mortgage was a constituent of the whole agreement contemporaneously made, of which the written contract set out by us is a part, and that the execution of the note and mortgage was merely a variation of the partnership contract to that extent. That the partnership was launched, the business was conducted as a partnership enterprise in recognition of that relation. The record does not disclose any effort by either Fuqua or Rush to pay any part of this note to the bank except that Rush says he directed an application of credit of some $2,500 of his own money upon this note November 18, 1906, and the application of other credits as land was sold, the proceeds realized and turned over to Fuqua. Intervener Fuqua seems to contend that the note covered an overdraft; defendant Rush asserts that it absorbed the

$9,600, which was the purchase price of the land. Rush admits he made no statement to Fuqua that the written contract of partnership had been abrogated at the time the former demanded the note and mortgage to be executed by him and his wife, and that the matter of the change of the status of the transaction was never really discussed between them. The acts of these parties subsequently are consistent and inconsistent with the fact of partnership, whether contended it was made by positive agreement, or abrogated, on the 24th day of March, or by acquiescence thereafter. Fuqua is shown to have kept the land account upon books in the bank as a Fuqua-Rush land account and states that Rush knew it, which the latter denied. He writes to Rush in 1910 that "your note to the bank will soon be barred by the statute of limitation," and that they must take prompt steps to protect the interest of the bank. In the same letter he states to Rush that, if he desires to settle the matter with him, "You will call not later" than a certain date. There is testimony that this note was considered as covering an overdraft and future drafts to be made, and testimony that it covered the $9,600 which bought the land, as part of the $12,000, the face of the note. This section was sold by Mr. Rush to different parties, down to 200 acres, which latter tract was sold to one Gid Jowell for the sum of $20,000, represented by six vendor lien notes, sued upon by the bank as collateral security to the $12,000 note.

Intervener, Fuqua, introduced the depositions of Rush, which were to the effect of a demand for the personal indorsement of Rush upon the back of the Jowell notes, and which Rush had first refused to accede to, with the further statement on his part that he (Rush) thought he would file suit against the bank to release this mortgage, claiming that he had really paid it off but that he was afraid he would lose the sale of the land, and concluded to indorse the paper and fight it out in the court. This testimony travels in different directions, inappropriate for us to discuss. Rush says that when the land was sold down to 200 acres, and before the Gid Jowell transaction occurred, Mr. Fuqua asked him what he was going to do with the land, and he (Rush) informed him that his wife said they had better keep it for a home. There is a statement in this record in the nature of an admission by Rush long subsequent to the 24th of March, by Rush, that a partnership was in existence; action upon his part with others, however, that none existed from the time the original contract was executed, and the consultation with others, for a confirmation of his theory; testimony that he instructed Mr. Fuqua to credit this note with his own funds and the whole is quite voluminous, an analysis of which supporting each theory would be unprofitable. We have attempted to weigh the statement of facts with care and the different phases of this testimony to ascertain the sufficiency of the same upon the issue of partnership as to this land transaction as an undisputed issue. There is such an irreconcilable conflict as to certain essential elements it would be inappropriate for us to go into any delicate balancing of the strength of this evidence; this we are not concerned with except as a matter of law to ascertain the conflict and are not suggesting as a conclusion in any manner with reference to the status of the matter discussed. It may be that the authorities in the past have confused the matter of partnership inter se in considering the tests of a partnership, arising often upon the criterion whether a party has a title in the profits or only an interest in the same as an ascertained result, as compensation in lieu of salary or in lieu of interest upon the loan and sometimes arising in the old cases where one contributes capital and the other his labor, and no mention is made as to losses. These matters in this record as tests we are not concerned with.

[2] "Authorities are abundant to the effect that a partnership may, according to the intention of the parties, be formed for the purpose of one transaction alone in real estate; that is, the buying of one tract or more of land at the same time and selling them for a profit. * * * As a matter of law, such partnerships may be formed, but whether they exist is a question of fact to be determined from the evidence." Justice Brown, in Spencer v. Jones, 92 Tex. 516, 50 S. W. 119, 71 Am. St. Rep. 870.

[3] It is necessarily based upon contract, whether express or implied (that is, a partnership inter se), but the intention of the parties to form one is often, as in this record, blended with such cross purposes as that a court cannot say.

[4] Of course we have the same question of the competency of the parties, consideration, the subject-matter, and the meeting of minds, as in other contracts.

[5] It is true that the written contract of partnership should be interpreted by the aid of the circumstances to discover the intention of the parties, and their subsequent acts should be considered in regard to the character of relation they considered existent between them, notwithstanding the contract upon its face is unambiguous.

When the written contract was executed, $9,600 had been paid upon the land by the check of Rush upon the bank, and it is true that this was the same method pursued in buying cattle and paying expenses of that partnership, and we are not saying that the manner of conducting that transaction is not evidence as to the character of the other relation. Rush even denies that he knew that the checks as to the cattle transactions were being charged to him personally upon the books of the bank.

By the written contract Fuqua had fur-

nished the money, although $8,640 of the same was to be paid, not that he agreed to procure it on open account from the bank or in any other manner. Fuqua, by this contract, was the one to be reimbursed and not the bank.

[6] It may be true that the sum of $960 was procured in a sense to be paid by Fuqua out of the bank, but the evidence would justify the finding of the jury that, when the $12,000 note was executed, it was to cover this $960 and the $8,640 paid on the 14th of April following and constituting the purchase price of the land, and it could find as between Fuqua and Rush that this note, with its additional security, discharged this $9,600.

[7] Although, for proper intervening equitable reasons, an action may arise between a creditor and a debtor not existent in this record, permitting revival by a creditor of an open account for protection and equity, but ordinarily, where a note is given to cover a debt of lesser dignity, the lesser is merged. Rush and the property of his wife could not have escaped a liability to the bank on this $12,000 note, and if it absorbed the $9,600, the consideration for the purchase of the land, a jury could find that Rush in reality furnished the money. In other words, they could find that this note was to absorb this $9,600 agreed to be furnished by Mr. Fuqua, and could find, if the $9,600 was merged in this note by this new contract to the bank, that Fuqua had eliminated the executory condition by him to furnish the capital stock, which upon his part was a precedent condition to the launching of the partnership. It is true the contract was consummated and executed in the sense that it had been agreed upon, but it was executory in the sense that the main contributing element was yet to be made. If the note and mortgage were a subsequent transaction, not that we say it is true, but we have to assume the truth of it for the purpose of considering it a disputed issue, hence up to the time of the execution of these two instruments there can be but one of two things, under the testimony, which Fuqua agreed to perform. He either agreed to furnish the money directly out of his own pocket or he agreed to procure it from the bank upon open account, as in the cattle partnership, not to procure the bank to loan the money upon a 10 per cent. note with 10 per cent. attorneys' fees, which as against the bank, as stated, Rush nor his wife's land could possibly escape. "An agreement of partnership, like any other contract, must be founded upon a consideration either of mutual promises or contributions." Bates on Partnership, vol. 1, § 2. Of course appellee says, "This is immaterial as we furnished the money." This may be a matter of form and substance, according to the intention of the parties.

[8] If the note and mortgage absorbed the $9,600, and it was Rush's personal obligation to the bank and intended that his would be the sole liability to that institution, secured by his wife's property for the payment of it, then Mr. Fuqua's previous stipulations to furnish the capital stock were at an end, as the contract in this respect was withdrawn. A question of dissolution with a notice of dissolution does not enter into a transaction of this charge; neither is it a question of a violation of a partnership contract; if the jury found in accordance with that theory it would constitute a withdrawal from the partnership by the creation of a new arrangement. A contribution of the capital stock, unless waived, is necessarily a condition precedent to the full formation of partnership.

[9] Of course there are cases where the subsequent course of conduct between the parties does waive it, and cases argued by appellee of a mere breach or violation of a contract of partnership, which does not exist in this record, and we are not able to say as a matter of law that upon the whole testimony the relationship between these parties that their acts and statements and positions assumed by each constitute a waiver or a recognition of the status of partnership subsequent to the 24th of March, 1906.

In the cause of James v. Stratton, 32 Ill. 204, by the Supreme Court of that state, it was presented that one Woodward and the defendant in error Stratton were partners, and who had jointly undertaken to purchase cattle upon a joint account, each to contribute an agreed amount for that purpose. One Baker seems to have been a purchasing agent for the purpose of buying cattle, and it appears that Woodward and Stratton had informed him that they were partners. Woodward, although, having contracted to contribute a part of the capital stock to carry out the purpose indicated, and thereafter having failed in that respect, the defendant in error Stratton borrowed the money for that purpose, paid for the cattle purchased, shipped the cattle to market in his own name, and refunded the borrowed money; the evidence as indicated being the agreement of the parties to furnish this money to buy said cattle and their admission that they were partners in said transaction. The court said: "That the fact that defendant in error (Stratton) borrowed the money on his own individual responsibility, paid the freight, and shipped the cattle in his own name, * * * rebuts the presumption of partnership and was no doubt considered by the jury as entitled to more weight than the statement of Baker.'

In the case of Napoleon v. State, 3 Tex. App. 523, two parties had agreed to a joint adventure, each to furnish a like amount for the enterprise, and one of them to give his personal attention to the partnership business, and the parties to share alike in the profits. One of the parties furnished his money to the other, who was to conduct the enterprise, and said other party, the court

says, "never performed his part of the condition precedent to the partnership; that is, to furnish his part of the money and give his personal attention to the business of the partnership agreed on between them." The court further stated: "The partnership was never consummated. The appellant did nothing in the performance of the conditional agreement. * * * No one of the conditions precedent were performed by defendant. Then there was no partnership, and defendant had nothing over which to exercise control and authority as a principal or owner."

We refer to the case of Holgate v. Downer, 8 Wyo. 334, 57 Pac. 918, which seems to be rather a full discussion of the subject.

[10] We do not think appellant's position is sound in attempting to condemn the contract of partnership if made and refuse Fuqua an accounting between him and Rush on account of Mr. Fuqua's position as president and director of the First National Bank of Amarillo. The case of City National Bank v. Merchants' & Planters' National Bank, 105 S. W. 338, decided by the Texarkana Court of Civil Appeals, discloses a condition where two officers of different banks participated in a transaction of a loan from one bank to the other. The court said: "Even where a majority or all of the contracting officers of two corporations are common to both, that fact alone does not make a contract between the two corporations, entered into by such contracting officers, absolutely void and incapable of ratification. The current of modern authority holds that the most that can be said against such contract is that they will be subjected to close judicial scrutiny when questioned at the proper time and will be set aside upon the appearance of unfairness. But if it should appear, upon investigation, that the contract is fair and there has been no abuse of the trust relation, the contract will be permitted to stand [citing authorities]. The extent to which the courts will go in refusing to enforce contracts of this kind, as shown by the adjudicated cases, depends in a great measure upon the facts of each particular case."

In the case of Twin Like Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328, the Supreme Court of the United States held that a director of a corporation may loan money to the same corporation and bind the property securing the loan when the transaction is open and free from blame.

There is no evidence in this case that the relationship of Fuqua influenced him whatever in his position with the bank; he was at all times protecting the interest of the bank. The fact (if it be a fact) that some directors may not have known that Fuqua was a partner and that the overdrafts bore 6 per cent. interest we do not believe to be sufficient to void any contract which may exist between Fuqua and Rush. The former

owned $196,000 of the $200,000 capital stock of the bank, and the accounts were shown upon the books of the bank and known to all in the bank, and, while his position is one in the nature of a trust to the depositors as well as the stockholders, the matter of a dealing by an officer seems to be a question of one of intrinsic fairness to the bank, the lack of which is not shown in this record. Under the decisions, as disclosed by the Marbury Case, supra, a contract may be void or voidable or valid where the parties may occupy in a sense an inconsistent position with reference to the interests involved; but we do not think that the relation of Fuqua with Rush, if based upon contract, comes within the purview of the doctrine disclosed in the line of cases declaring contracts void on account of the relation of Fuqua to the bank. It would certainly be inequitable and unjust for Rush to absorb the proceeds of the land transaction if it constituted a partnership and deny an accounting with him, even if it had been contemplated that the money to conduct the partnership was to be procured from the bank, and we do not believe the doctrine sound, under the facts of this record, and that public policy enters into it sufficiently to condemn the contract, collateral to the relation of Fuqua to the bank, between the parties, if subsisting. We also refer to the case of De Leon v. Trevino, 49 Tex. 95, 30 Am. Rep. 101, which approves the leading case of Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732, by the Supreme Court of the United States, and, while questioned, seems to be unshaken with reference to the peculiar facts of that case, where the property of the partnership had assumed changed forms, and the profits realized, and the partnership practically completed.

Should it be found upon another trial, that the land transaction was not a partnership, then we think the proceeds derived from the sale of the land upon which a mortgage existed to secure the $12,000 note should be applied upon the note as of the date received by the bank.

[11] To allow the bank to apply the proceeds of the sale of the mortgaged property, without the consent of Rush to an indebtedness not secured by the mortgage, would be to extend and enlarge the mortgage contract. The intention or consent of Rush cannot be presumed but his intent and consent to apply to other debts should be shown by the evidence. Howard v. Schwarz, 55 S. W. 348. "While the creditor has the right to apply a general payment, the debtor having made no specific application, the law, in the absence of an agreement to the contrary, applies a payment realized from a particular fund in relief of such fund. On this principle a mortgagee, in the absence of an agreement with the mortgagor, is bound to apply money realized from the sales of property

covered by the mortgage to the mortgage debt." Taylor v. Cockrell, 80 Ala. 236. If there was a payment of other money by Rush to the bank, which he at the time directed to be applied on the note, such application should be made as directed.

The verdict and judgment in this case is difficult to analyze or to understand. Upon our first reading of the verdict, together with the report of the auditor, we were under the impression that Rush was charged in two different ways with the sum of $2,-881.25 and required thereby to account to Fuqua in the cattle transaction for one-half thereof and to two-thirds of the sum in the land transaction, and that it gave Fuqua a verdict for $2,881.25 absolutely against Rush. The judgment, however, does not give Fuqua a recovery against Rush for $2,881.25, as we understand it. As the verdict and judgment is entered, perhaps no injury is shown to Rush in the way it is drawn with reference to the particular matter discussed and without reference to its merits upon other features. We are not able to follow the method the court pursued in reaching the amounts directed to be found by the jury.

[12] It occurs to us that Rush should not be charged with the Gid Jowell notes for $20,000. As these notes were up in the hands of the bank, or with Fuqua, according to the bank and Fuqua, to secure the partnership account carried in the name of Rush, as well as the individual overdraft of Rush. The proceeds of this note should be applied to the amount due the bank by the partnership, and the remainder of the proceeds divided between the partners, according to their respective interest, and, if the bank has a lien for Rush's interest, that interest should be applied to his individual indebtedness. We do not believe the court should charge against Rush the face value of the notes for the purpose of giving Fuqua his profits and to do so declare an indebtedness against Rush for the face value of the notes. If upon sale, under the decree of the court, the notes should not bring their face value, nevertheless Fuqua has a decree for $11,967.-59 and could appropriate all the proceeds. This occurs to us would not be fair to Rush. Whatever the proceeds are, let them share therein in the proportion of their respective interests, and, in sharing in the two partnerships, Fuqua should account for $2,960.88 which was turned over to him by Rush in the cattle transaction. We think the $2,881.-25 charged to Rush in the cattle business should be offset against Fuqua's $2,960.88. Taking the auditor's report and certain interests allowed as having been collected on certain cattle notes, it would appear that Fuqua had in his hands $79.63 more of the cattle partnership funds than Rush. The confusion occurs to us is caused by the individual indebtedness of Rush and an effort to secure the bank in its collection. The indebtedness to the bank should first be ascertained and then out of Rush's interest in the two partnerships that debt should be paid, if it can be done equitably, and under the pleadings, and in accordance with the rules of equity. But we do not think that Fuqua should get judgment establishing a debt against Rush for funds which are no more in his hands than in the hands of Fuqua. They should share according to their respective interests in the proceeds of the note, after charging each with the money or the property appropriated to their individual use. We may state generally the judgment should do no more than declare the respective interests of the bank; Fuqua and Rush in the proceeds of the partnership effects and a decree authorizing a pro rata payment in accordance therewith, neither Fuqua nor Rush should be charged with the value of the property which the court orders sold.

As to the matter of the question of the cattle partnership, we think the testimony sufficient to sustain the instructed verdict that Fuqua and Rush were partners in that transaction. The discussion of the question of the land transaction with reference to the execution of the $12,000 note, and the additional security evidenced by the deed of trust, and our discussion of the record as to the issues revolving around this matter we think sufficiently indicate an elemental difference in the matter of the two transactions arising as a matter of law. While the cattle contract says that Fuqua had paid for the cattle purchased under that contract, it further says that the original cost of the same is evidenced by checks executed by Rush upon the First National Bank, and which the testimony discloses had been done prior to the execution of the contract, and Rush says that he went along with reference to this cattle transaction without injury. Without discussing the difference in the testimony and the inferences from the record, we believe the court, upon the same evidence, should instruct the jury in favor of Fuqua upon this particular issue. We note that the denial of partnership as to this transaction is wholly insufficient, and the court was amply justified on this account in his instructed verdict.

The cause is ordered reversed and remanded for another trial.