McCLENDON, P. J.
This is the second appeal of this case. Upon the former appeal a writ of error was granted by the Supreme Court, and the cause was referred to this section of the Commission. The issues made by the pleadings and evidence upon the former appeal are substantially the same as those presented by the present record, with the exception of the issue of limitation as applied to that portion of plaintiff’s action which seeks recovery against defendant on account of overdraft of J. W. Rush. The record is quite voluminous; and in view of the very full and eai’eful analysis of the pleadings and evidence, in so far as they control the questions now presented for decision, contained in the former opinion of the Commission written by Presiding Judge Montgomery, we deem it necessary only to refer to that opinion in this regard. 210 S. W. 521. The two opinions' delivered by the Court of Civil Appeals upon the former appeal are reported in 160 S. W. 319 and 609. For the opinion of that court upon the present appeal, see 227 S. W. 378.
We think it will serve to a clear understanding of the questions now at issue to give an outline in chronological sequence, and as briefly as we may, of the transactions out of which the controversy arose.
In November, 1904, the First National Bank of Amarillo, plaintiff below, which we will refer to for convenience as the hank, and of which W. H. Fuqua, intervener, was the president and virtual owner (he owning all the stock except sufficient to qualify the necessary directors), held a mortgage on a herd of cattle to secure a loan of $2,000. Fuqua at &at time entered into an agreement with J. W. Rush, original defendant below, by the terms of which Rush acquired the cattle, and Rush and Fuqua became partners in the cattle business. Under this arrangement Rush was to look after the cattle and provide forage and pasturage. Fuqua was to furnish the necessary money for the business without interest; and the net profits were to be divided equally between the two. Rush upon making sales was to turn over the proceeds whether cash or notes to Fuqua, who was to collect the notes and hold the proceeds until the contract was terminated. An account was carried on the books of the bank in the name of Rush, and upon this account he drew checks from time to time properly chargeable to the partnership account. The proceeds of sales of the partnership cattle were turned over to Fu-qua, and he credited them as of the dates of their receipt to two impersonal accounts with the bank, one called “Fuqua-Rush cattle account” and the other “Fuqua-Rush bull account.” In an audit of the books of the bank for the purposes' of the trial of this case, these two accounts are treated as one. It may be noted that Fuqua credited only the face of notes received by him to this account, the notes being treated as cash, and the interest after it was collected not being accounted for on the books of the bank. It also appears that Rush was charged interest on daily balances, as for overdraft' on his personal account. In addition to the partnership checks Rush also drew on his general account at the bank checks which were his own personal obligations.
On March 24, 1906, Rush and Fuqua entered into an agreement, which for our present purposes we will treat as a partnership contract, by the terms oí which it was recited: That Rush had purchased a section of land in Swisher county, being section 27, block W-l, sometimes referred to as the Adair section; that Fuqua had paid the purchase money for the land amounting to $9,-600; that Rush was to handle this section and dispose of it to the best advantage and pay Fuqua the $9,600 so paid by him without interest and two-thirds of all' profits derived from the sale of the land; and that Rush *351 was to be entitled to one-third of the profits, if any.
At about the time this contract was entered into the Rush general account at the bank showed an overdraft exclusive of interest amounting to some $14,000. By crediting this account, however, with the proceeds of all cattle transactions which had been delivered by Rush to Fuqua, the net amount of this overdraft without interest was about $3,900. Of this amount Rush had drawn for his personal account approximately $2,500, and the balance was properly chargeable to the cattle partnership. On the same day that this land partnership contract was executed Rush and wife executed to the bank their promissory note for $12,000 payable on demand and bearing interest at the rate of 10 per cent, per annum, and to secure this note Rush and wife executed a deed of trust in faypr of the bank with Fuqua as trustee conveying the Adair section of land and also an adjoining section, which was the separate property of Mrs. Rush. The proceeds of this note were credited to Rush’s general account on the books of the bank. Prior to the time this contract and note were executed, Rush had negotiations with the owner of the Adair section for its purchase, and those negotiations were completed shortly thereafter, and the land was paid for by checks drawn by Rush upon his general account at the bank. In addition to the purchase price of the land there was an expense bill for surveying amounting to $120, which was also paid out of Rush’s general account. As the lands were sold Rush turned over the proceeds to Fuqua, who credited them to another impersonal account, which he h.ad opened in the name of “Rush-Fuqua land account." The items credited to this account up to December 8, 1906, amounted to $12,750, which was $155.77 more than was necessary to discharge the note and interest, if the several amounts credited to this account are credited upon the note as of the dates of their respective payments. There remained in the section 200 acres, which was sold to one Jowell for $20,000; Jowell giving his notes for that amount secured by lien on the land and by deed of trust upon other lands owned by him upon which there was a prior lien. The Jowell notes were turned over to Fuqua. The last item of debit on the Rush account was made on February 15, 1908, and the last deposit item November 15, 1908. Rush’s final overdraft represented by his personal checks which the bank had honored amounted to about $10,000 exclusive of interest.
This suit was filed by the bank against Rush and wife on March 10, 1910, on the $12,000 note alone and to foreclose the bank’s lien on the Jowell notes. No further recovery was sought by the bank. Rush and wife plead payment of the notes, setting up the several items which had been received from sale of the lands, and which had been credited to the impersonal Rush-Fuqua land account. Later Fuqua intervened and set up the two partnerships and asked for an accounting with Rush.
Upon the first trial of the case the court upon a directed verdict entered judgment to the effect that Fuqua and Rush were partners in the land transaction. This judgment was reversed upon appeal, and the cause was remanded for further proceedings in accordance with the opinion of the Commission.
Rush and wife both died while the first appeal was pending, and Mamie Rush was appointed administratrix of their estates, and as such was substituted as party defendant. Prior to the first appeal the only pleading of the bank referring to the. Rush overdraft was a supplemental petition filed in 1911. It was said in the former opinion of the Commission:
“As we construe the bank’s pleading, its suit was against Rush to recover on the note, and not for any balance due on open account.”
After the cause was remanded the bank amended its pleadings and sought recovery on the Rush overdraft as well as on the note. Mamie Rush, in addition to adopting the former pleadings of defendant J. IV. Rush, pleaded the two-year statute of limitations to the Rush overdraft.
While the first appeal was pending the Jowell notes were defaulted in, and it became necessary to institute suit upon them. This was done under an agreement among all parties to the suit by which the iands securing the Jowell notes were bought in by a trustee, who holds' them subject to final adjudication of the rights therein of the parties to this suit. The last trial of the ease was had before a jury, and the verdict was upon special issues. Those issues and the answers of the jury were as follows:
“Special issue No. 1: Did intervener, W. H. Fuqua, pay or on his individual responsibility procure the First National Bank of Amarillo to pay the entire $9,600 purchase price paid for section No. 27, block W-l, Swisher county, Tex-.? Answer: No. If you answer special issue No. 1 above ⅛ the negative, then you will answer the following special issue:
“Special issue No. 2: Did defendant, J. W. Rush, after ho had executed and delivered the $12,000 note sued upon, recognize as valid and binding the contract made and entered into by and between him and the intervener, W. H. Fuqua, on the 24th day of March, 1906? Answer: Yes.
“Special issue No. 3: Did the defendant J. W. Rush, at the time he turned over to intervener, W. H. Fuqua, or to other officers of plaintiff bank, the proceeds arising from the sale of parts of said section of land, consent for said proceeds to be applied otherwise than on said $12,000 note? Answer: No.
“Special issue No. 3 requested by defendant: At the time J. W. Rush delivered to W. H. Fuqua the proceeds of the sales of portions of the *352 Adair section of land amounting in the aggregate to $12,750, did he, when he turned over said amounts, instruct W. H. Fuqua, to apply same on the $12,000 notes? Answer: Yes.
“Special issue No. 6, requested by defendant: Was the $12,000 note, bearing date of March 24, 1006; executed for the purpose of covering the then existing overdraft in the name of J. W. Rush on the books of the First National Bank? Answer: No.
“Special issue No. 8, requested by plaintiff: Was the $12,000 note, dated March 24, 1906, executed by J. W. Rush to apply as a credit on the J. W. Rush account? Answer: Yes.”
All parties moved for judgment, and the trial court entered judgment in substance as follows: Denying recovery to the bank against both Fuqua and defendant in error; awarding to defendant in error $333.81 against Fuqua as the net balance owing by the latter to Rush upon the cattle partnership; and decreeing that there was no land partnership, and that defendant in error recover the proceeds of the Jowell notes.
Upon the cattle partnership branch of the case the only questions raised relate to two items in the auditor’s report, which report was the basis of the trial court’s judgment. We have carefully considered these objections ' and have reached the conclusion that the Court of Civil Appeals was correct in holding that there was evidence supporting each of the items brought in question, and that the trial court’s judgment on this branch of the case ought not to be disturbed.
The bank’s cause of action upon the Rush overdraft accrued more than two'years prior to the filing of the supplemental petition of 1911, which was the first. pleading filed by the bank mentioning the overdraft. That cause of action was therefore barred by limitation. regardless of the construction placed upon the 1911 pleading.
We also think the Court of Civil Appeals correctly held that the several items, proceeds of the land sales, which Rush turned over to Fuqua, should be credited upon the $12,000 note. The Adair section was security for that note, and Rush had the right to have the proceeds of sales from the section applied to the note. This was a right which Mrs. Rush also had, since her separate real estate was also security for the note. Proceeds of sales from the Adair section could not be diverted to other purposes without the consent of Rush and wife. The jury’s answers to special issues 3 and 3 requested by defendant established the fact that Rush not only did not give his consent to any other disposition of those proceeds, but instructed Fuqua to apply them on the note. We refer to the opinion of the Court of Civil Appeals for a full discussion of this question with citation of authorities.
No complaint is made in the petition for writ of error concerning the action of the Court of Civil Appeals in affirming the trial court’s judgment in so far as it denied recovery to the bank against Fuqua.
This brings us to the main question in the case, namely, whether, under the jury finding's, the trial court was warranted in rendering judgment that Fuqua was not entitled to participate in the profits of the land transaction.
In the former opinion of the Commission it was held that the land contract was plain and unambiguous on its face and evidenced an executed partnership agreement, under which Rush had bought the land and Fuqua had paid for it, but that, since these recitals were not true, the contract must be construed as wholly executory and as .obligating the parties to do what the contract recited they had already done. It was further held that, if the execution of the note was a means adopted by the parties for carrying out the contract, or was so understood or treated by them, that effect should be given to the transaction, in which event the note should be regarded as a partnership obligation to the extent that it represented the cost of the land, and the interest to that extent would as between Rush and Fuqua be chargeable to the latter alone. On the other hand, it was held that, if such was not the intention of the parties, and the note was executed as the personal obligation of Rush alone upon ample security, the subsequent failure on Fuqua’s part to comply with his obligation to furnish the money for the land purchase might, at the option of Rush, be treated is a rescission or abandonment of the contract, and thereafter neither party would be bound thereby. If, however, Rush chose not to exercise this right to rescind or to acquiesce in Fuqua’s attempted abandonment, the contract would be kept in force for the benefit of both parties. It should be borne in mind that there was no evidence of an express agreement of the parties to abandon the contract, and that the issue of its continued existence or termination is to be determined by the effect given to their actions.
The facts found by the jury which have bearing upon the question of the continued existence of the land partnership áre embodied in the answers to special issues numbered 1, 2, 6, and 8. The answers to special issues 1, 6, and 8 establish as facts that Fuqua did not procure the bank to pay for the land on his individual responsibility; that the $12,000 note was not executed for the purpose of covering the then existing overdraft in the name of Rush; and that the note was executed by Rush to apply as a credit on his account with the bank. Applying these findings of fact to the issues affecting the land partnership, they negative the theory of Fuqua that the note transaction was a means adopted by the parties for carrying out the land partnership and establish as a fact that the effect of that trans *353 action was a breach or attempted abandonment of the partnership contract by Fuqua.
The jury’s answer to the second special issue established as a fact that Rush recognized the land partnership contract as valid and binding after he executed the $12,000 note. This finding, when applied to the land partnership transaction, negatived the theory of defendant in error that Rush exercised his right to rescind the contract on account of Fuqua’s breach or to acquiesce in Fuqua’s attempted abandonment, and established as a fact that Rush continued to hold Fuqua bound by his contract. We think this is the only reasonable interpretation to be put upon the jury findings as applied to the controverted issue on this branch of the case.
It is urged by defendant in error that the jury findings upon special issues 1, 6, and 8 establish not merely a breach.or attempted abandonment by Fuqua, but also an acquiescence therein by Rush; in other words, that these findings conclusively establish a mutual abandonment of the contract; that the contract was thereby abrogated by mutual agreement of the parties, and therefore the finding that Rush subsequently recognized it as valid and binding could have no effect to call it back into being, since that could not be done by one of the parties alone. This might be the proper interpretation to give to the findings if the answers to the first, sixth, and eighth special issues stood alone. But it would not be proper practice to single out one or more special issues and ignore others bearing upon the same general issue.
All the issues must be considered together as a whole. If, when construed as a whole, they admit of more than one reasonable construction, the trial court has power to apply that reasonable construction which he deems proper. Elder-Dempster Co. v. Weld Neville Co. (Tex. Com. App.) 281 S. W. 102. If they are, conflicting and one finding destroys another, then the verdict will not support a judgment upon either finding, and it must be set aside. But if, taking, all the findings together, and applying them to the contested issues in the case, they fairly dispose of those issues, and are not ambiguous or conflicting, then the duty rests upon the court to enter judgment in accordance with all pertinent findings. Tested by these rules, we think the findings of the jury settle every controverted issue between the parties which has bearing upon the continued existence of the land partnership contract, and establish as a fact that there was no mutual abandonment of the contract, but that Rush refused to treat the contract as rescinded or to acquiesce in Fuqua’s attempted abandonment of it.
This conclusion is made even more certain by the additional fact that the jury were instructed that, if they answered the first spe-eial issue in the negative, then they should answer the second special is'sue. It was thereby made plain that, if the first special issue were answered in the affirmative, then the partnership issue would be determined in favor of Fuqua’s theory that ■ -the note transaction was a means adopted by the parties for carrying out the contract, and there was no breach or attempted abandonment of the contract. In that event the second special issue would, not be material and need not be answered. On the other hand, it is equally clear that the direction to answer special issue No. 2 if special issue No. 1 were answered in the negative amounted to an affirmative charge by the court to the effect that a finding on the second special issue was essential to a holding that the partnership had been rescinded or abandoned by mutual action of the parties. Nothing could be clearer to our mind than that this was the theory upon -which the case was submitted to the jury. It was not within the power of the trial court to disregard that theory and the finding of the jury thereon and adopt some other theory which the evidence might support.
The failure-of defendant in error to object to the form in which the issues were submitted or to request other issues must be regarded as a waiver of any theory of defense not embraced in the issues submitted and as an acquiescence in the theory upon which the case was submitted to the jury. Texas City Transportation Co. v. Winters (Tex. Com. App.) 222 S. W. 541.
It is further urged by defendant in error that Fuqua should not be permitted to participate in the profits arising from the land transaction, because the only thing he obligated himself to do, namely, to .furnish the money, he failed or refused to do, and that therefore he is in no position to claim or assert any interest in the profits arising from the transaction. In substance, this contention is to the effect that, when Fuqua failed in the only obligation which the contract imposed upon him, there was no consideration whatever to support the agreement on Rush’s part to permit him to participate in the profits of the transaction. In determining Fuqua's right to the benefits of the contract, we are not permitted to inquire into the equities of the parties or the fairness of the agreement they have made. Whether or not Fuqua complied with the contract, it imposed certain obligations upon him; and, viewing the transaction as of the date of his breach, it was by no means a unilateral agreement under which he could share in the profits, if any, and not be subject to any detriment if it were unprofitable. If Rush had elected to treat the contract at an end upon the theory either of its breach or abandonment by Fuqua, then he was liable to the bank absolutely upon a demand-note, which provided for 10 per cent, inter *354 est, and which was due from the date of its execution without demand and without grace, and the bank could have sued upon the note at once and foreclosed its lien both on the Adair section and on the section belonging to Mrs. Rush. Aside from this fact, there might have been a loss in the purchase of the land which, but for the contract, would have fallen entirely upon Rush. On the other hand, by recognizing the contract as valid and binding upon Fuqua, Rush was in position to insist that he be protected upon the $12,000 note; that Fuqua pay the interest on that note to the extent of the purchase price of the land; and that Fuqua carry on his own responsibility the obligations arising out of the land purchase, at least' for a reasonable time, so as to permit a sale of the lands without sacrifice, and, if possible, at a profit. If there should be a loss in the land transaction, two-thirds of that loss in any event would fall upon Fuqua regardless of what interpretation be placed upon the contract. We think there can be no question but that the contract imposed sufficient obligations upon Fuqua to support a consideration for his participation in its benefits in the event of Rush’s refusal to rescind or acquiesce in'his attempted abam donment of it.
We conclude that the judgment of the Court of Civil Appeals affirming the judgment of the trial court upon the issues relating to the cattle partnership and the suit of the bant against Rush and Fuqua should be affirmed; that the judgment of the trial court and Court of Civil Appeals upon the issue of the land partnership contract should be reversed; that judgment should be rendered decreeing the existence of said partnership and holding it valid and binding; and that the cause should be remanded -to the trial court, with instructions to adjust the rights of Fuqua and the defendant in error in the proceeds of the sale of the partnership lands in accordance with the view above expressed.