C. R. GARNER & CO. v. BEAUMONT COTTON OIL MILL CO. (No. 448.)

(Court of Civil Appeals of Texas. Beaumont. April 29, 1919. ` Rehearing Denied May 7, 1919.)

1. SALES ⬤➞420 — ANTICIPATORY BREACH — EVIDENCE.

In action for damages for claimed anticipatory breach of contract to deliver 500 tons of cotton seed cake, whether there was a breach *held* for the jury.

2. SALES ⬤➞420 — ANTICIPATORY BREACH — PROMPTNESS IN CLAIMING BREACH.

In action for damages for claimed anticipatory breach of contract to deliver 500 tons of cotton seed cake, whether plaintiff acted promptly in claiming the breach *held* for the jury.

3. SALES ⬤➞172—SUIT BASED ON ANTICIPATORY BREACH—DEFENSE.

In action for damages for claimed anticipatory breach of contract to deliver 500 tons of cotton seed cake, that defendant's plant was destroyed by fire after contract was made *held* no defense, even if contract did provide that defendant was not responsible for damages arising from causes beyond its control.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Suit by C. R. Garner & Co. against the Beaumont Cotton Oil Mill Company, in which defendant filed a cross-action against plaintiff. From the judgment rendered, plaintiff appeals. Reversed and remanded.

Madden, Truelove, Ryburn & Pipkin, of Amarillo, and Crook, Lord, Lawhon & Ney, of Beaumont, for appellant.

Smith & Crawford, of Beaumont, for appellee.

HIGHTOWER, C. J. The nature and result of this suit is succinctly stated in appellant's brief, and that statement is conceded by appellee to be correct. It is substantially as follows:

This suit was instituted by the appellant, C. R. Garner & Co., against the appellee, Beaumont Cotton Oil Mill Company, in the district court of Jefferson county, to recover damages for a claimed anticipatory breach of contract to deliver 500 tons of cotton seed cake; it being alleged that at the time of such breach such cake was worth $7 more per ton than the contract price, and plaintiff claimed damages in the sum of $3,500.

Trial was had with a jury, and upon conclusion of the evidence the court instructed a verdict in favor of appellee as to appellant's cause of action, and upon answers by the jury to special issues on appellee's cross-action for damages for alleged wrongful detention of money garnished by the

hands of certain insurance companies, judgment was rendered in favor of appellee against appellant for such damages.

Appellant, who was plaintiff, alleged, substantially, that it was a corporation, engaged in brokerage business at Amarillo, Tex., buying and selling cotton seed products, and that appellee, at such time, was engaged in manufacturing such products and selling same to purchasers throughout the state, having its mill and place of business in the City of Beaumont, Jefferson county, Tex.; that appellant, on October 25, 1917, made a contract with appellee, by which it purchased 500 tons of cracked and screened cotton seed cake or meal at appellant's option, guaranteed to contain 49 per cent. protein and fat, at the aggregate price of $50 per ton, f. o. b. the cars at Beaumont, Tex., shipment to be made on or after November 1, 1917, and not later than December 10, 1917; that thereafter, on November 3 and 6, 1917, appellant furnished shipping instructions, which were accepted by appellee; that on November 10, 1917, appellee breached said contract, and failed and refused to carry out the terms thereof, and refused to deliver said cotton seed cake and meal, but declared to appellant that it could not carry out said contract.

Appellant alleged that it did not carry such cotton seed products in stock, but bought and sold the same by telegram, telephone, and by letter, contracting to sell at the time such purchases were made, all of which facts were well known to appellee; that appellant advised appellee, as early as October 26, 1917, that said 500 tons of cake had been sold, but, although having such knowledge, appellee thereafter, on said November 16, 1917, refused to ship said cotton seed cake or meal, and appellant, in order to protect its customers, was obliged to buy same in for appellee's account, of which fact appellant fully advised appellee prior to such purchase, and did, in fact, buy such cake in at $57 per ton, f. o. b. the cars from the Texas Refining Company at Greenville, Tex., such purchase being made on November 12, 1917, the cake purchased being of the same grade, and upon the same terms of shipment; that the market price of such cake on November 10 and 12, 1917, was the sum of $57 per ton, f. o. b. the mills, and that such was the market f. o. b. the cars at appellee's mill in Beaumont on such dates; and that therefore appellant was entitled to recover said sum of $3,500, with legal interest from the day of such alleged breach of contract.

Appellee answered by special exceptions, general demurrer, and also by the following special pleas:

(1) That said sale was made under the terms of the contract attached to appellee's

answer, referred to as Exhibit A, which contains the stipulation that appellee should not be responsible for any damages arising from any cause beyond its control. The provision here referred to by appellee and claimed to have been a provision of the contract in question was follows:

"We are not responsible for damages arising from delays in transportation, or for any other causes beyond our control."

(2) That on November 9, 1917, appellee's mill and plant was entirely destroyed by fire, through no fault of its own, of which fact appellant was fully advised, but that appellant, though knowing the full time for fulfilling the contract had not transpired, maliciously and without probable cause, on November 21, 1917, instituted this suit, and caused writs of garnishment to be issued against certain insurance companies, and caused said companies to hold up the amount due to appellee on certain policies, for which such amounts and for the interest due on these amounts so claimed to have been wrongfully garnished by appellant, appellee sought recovery as damages.

(3) That such suits (garnishment proceedings) by appellant were wrongfully and prematurely brought, causing damages to appellee's credit and business reputation, and causing the bank in which appellee carried its account to mature its unmatured notes, causing the bondholders to become uneasy and causing the defendant to sell several hundred dollars' worth of cotton seed cake, when it could have held same and made a profit of several thousand dollars, stating the amount, and causing it to sell at a loss of several thousand dollars, stating the amount, parts of its machinery, all to its actual damage in the sum of $10,000, and appellee further prayed for exemplary damages.

Appellant, by supplemental petition, denied the matters set forth in appellee's answer, and alleged that that provision of the claimed contract on the part of appellee and referred to in its answer, reading as follows:

"We are not responsible for damages arising from delays in transportation, or for any other causes beyond our control"

—was no part of the contract made between appellant and appellee for the sale and purchase of said cotton seed products, and that such provision or claimed provision of the contract, though claimed to have been made a part of same by appellee, by having been wired to appellant as appellee's confirmation of such contract, was never received by appellant until after the fire in question, and was never accepted by appellant as any part of the contract, and that such provision was never, in fact, a part of the contract between appellant and appellee.

Since the trial court peremptorily instructed a verdict against appellant on its cross-action against appellee, the only question necessary for determination by this court is whether the evidence introduced on the trial was sufficient to raise the issue of anticipatory breach of the contract upon the part of appellee, and whether, also, the evidence was sufficient to raise the issue as to whether appellant promptly acted upon such anticipatory breach, and we therefore deem it proper to state largely the evidence introduced on these points.

C. R. Garner, appellant's secretary, testified that he was in active charge of appellant's business, which was that of buying and selling cotton seed products in a wholesale way, having shipment made direct from mills to appellant's customers; that the negotiations out of which this action arose began with a telegram from appellee, addressed to appellant, dated October 25, 1917, reading as follows:

"Offer you five hundred tons cracked cake forty-nine per cent. protein and fat subject being unsold shipment Nov. first ten days Dec. fifty-one dollars f. o. b. cars Beaumont."

Garner further testified:

That after the receipt of this telegram, he had a telephone conversation with Mr. McAdams, appellee's president, in which he told McAdams that he could sell the cake at $50, and that McAdams would let him know later in the day whether he could sell him at that price. Accordingly, on the afternoon of the same day, he received the following wire from appellee:

"You may go ahead and sell five hundred pounds [tons] as per my former telegram at fifty dollars net to us f. o. b. Beaumont wire confirmation today."

That on the same day the following confirmation was wired back to appellee:

"Sold per your offer 500 tons 43 per cent protein, prime in color and odor, cracked, screened cotton seed cake or meal, buyer's option November first ten days in December $50.00 f. o. b. Beaumont regular confirmation mailed."

That on October 26th appellant received from appellee the following wire:

"Telegram received referring to our telegram of twenty-fourth was for 49 per cent. protein and fat combined at sellers convenience during period named November first ten days in December. On receipt of this please telegraph confirmation this basis."

Garner further testified that the basis mentioned in this telegram was confirmed by wire from appellant to appellee reading as follows:

"Answering day message 49 per cent. protein and fat combined satisfactory."

Appellant also introduced in evidence a letter to appellee dated October 25, 1917, con-

firming this telegram, and also its original confirmation of the contract dated October 25, 1917, confirming the products purchased and the terms, etc., of the purchase. Mr. Garner then testified that this confirmation was never returned to appellant. Appellant then, by Garner, identified shipping instructions, dated November 3d and November 6th, for 120 and 380 tons of the products mentioned in the contract, which instructions were forwarded to appellee on such dates, and also introduced letters inclosing such instructions. There was also introduced in evidence a telegram to appellant from appellee, dated at Beaumont on November 5th, reading as follows:

"Your Reno, Nevada, instructions third can get out part last this week. Balance as early as possible next week advise"

—and also a reply message from appellant to appellee on November 6th, as follows:

"Your wire 5th reference Reno shipping instructions satisfactory to us. Please rush all possible."

Then, on the 8th of November, appellant received from appellee the following wire:

"Instructions received balance your contract can we change some of your instructions to meal so as to take care of meal made while grinding cake we are heavily sold up on cake and this will also help us from delaying your orders than may otherwise might be. Please advise."

To this message appellant replied, on November 9th, as follows:

"Answering day message. Cannot change cake ordered to meal but have party wanting three hundred ten tons meal 43 per cent. protein prime in color and odor November December shipment. On receipt of this please telegraph your lowest price quick."

And on November 9th appellant received from appellee the following telegram:

"Our plant entirely destroyed last night by fire impossible fill shipping order per your instructions will advise more fully by letter."

Mr. Garner then testified that his answer to this last-mentioned telegram was a telephone conversation with Mr. McAdams, appellee's president, and in this connection his evidence was as follows:

"I replied to that telegram. I talked over the phone with Mr. McAdams on November 10th. That was Mr. Y. O. McAdams, president of the Beaumont Cotton Oil Company. I called up Mr. McAdams and asked him what he was going to do, and what arrangements he was making about filling the cake orders sent down to him, and he told me that he had lost his entire plant by fire and he would be unable to fill the contract, and on account of the fire canceling the contract, and I thought I knew Mr. McAdams pretty well, and a little personal friendship existed between us, and I insisted that he should not treat me that way, but that he should go ahead and fill that contract. And he still in-

sisted that he had lost everything that he had and that on account of the fire he would cancel the contract and he would be unable to ship the cake. As to what he said about shipping or refusing to ship the cake, in that conversation, along that line, he said—he was telling me all the time he would cancel the contract, but I insisted that from a personal standpoint, even, he should go ahead and fill the contract with us, and he said he would let me know Saturday by telegram what he would be able to do about it. He told me that, if it was possible to make any arrangements to fill the contract, he would see about it and let me know fully the 10th—that was Saturday; and he kept telling me all the time the contract was canceled and how sorry he was he was unable to fill it."

He further testified, referring to a telegram then being exhibited, as follows:

"This telegram is one that I sent to Mr. McAdams on the 12th. I also sent this other one. My memory is that this telegram from the Beaumont Cotton Oil Company was received some time on the morning of the 13th. I do not know the exact hour in the morning, but it was put in the office in the morning of the 13th of November."

The telegrams to which the witness was referring above were as follows:

"Amarillo, Texas, November 12, 1917,
                                        "10:55 A. M.

"Y. O. McAdams, President Beaumont Cotton Oil Mill Co., Beaumont, Texas: You promised to wire us Saturday whether or not you would buy five hundred tons of cake you have contracted for November first ten days December shipment with us from Beaumont, Texas, Fifty Dollars per ton f. o. b. Beaumont, Texas., which you hold shipping instructions covering. Market advancing daily and we must have positive information by telegraph date if you have bought or will buy from other sources to fill this contract for shipment within contract period. *Unless we hear from you will buy in for your account five hundred tons of cake from Texas Refining Co., Greenville, Texas, at fifty-seven dollars per ton f. o. b. Greenville, Mount Pleasant, Texas.* This price fifty cents per ton less than we can buy from other parties. Answer immediately.

                            "C. R. Garner & Company."

The second of these telegrams mentioned by the witness reads as follows:

"Amarillo, Texas, November 12, 1917.

"Y. O. McAdams, President Beaumont Cotton Oil Mill Co., Beaumont, Texas: Wire immediately if you are going to ship five hundred tons per our contract with you per telegram date must know immediately without fail.

                            "C. R. Garner & Company.
                            5:10 P. M."

Not having a reply from appellee to either of its messages of November 12th, on the morning of the 13th appellant wired appellee as follows:

"In accordance with your wire and letter of the ninth instant and telephone conversation of

tenth instant advising you could not fill order for five hundred tons cake bought as per exchange of telegrams October twenty-fifth we have bought five hundred tons forty-nine per cent. combined protein and fat cracked screened cake or meal our option for your account in accordance with our wire of twelfth instant from Texas Refining Co., Greenville, Texas, fifty-seven dollars ton f. o. b. Greenville, Mount Pleasant, Texas, November first ten days December shipment and you will govern yourself accordingly, letter follows."

And on the same day appellant mailed to appellee a confirmatory letter, quoting the last-mentioned message and confirming same. The evidence further shows that at 6:23 p. m. on November 12th a telegram was filed by the Beaumont Cotton Oil Mill Company with the Western Union telegraph office at Beaumont, the message being sent charges collect, addressed to appellant; but it was shown by the witness Garner that said telegram was not received by appellant until some time during the morning of November 13th, and this telegram reads as follows:

"Telegram to Y. O. McAdams to hand. We have until end of contract period to fill trade under our contract of sale. We have right to cancel this sale if beyond our ability to meet conditions our mill a total loss until we make insurance adjustments and finish checking up our business we are unable to advise definitely whether or not we can fill trade or must exercise the above right; buy nothing for our account."

It was further shown by appellant, through the witness Garner, that the appellee never did deliver the 500 tons of cotton seed cake covered by the contract, and that the appellant bought that quantity of such cake from the Texas Refining Company, securing an option therefor on November 10th, by calling J. D. Middleton, manager, on long-distance telephone, buying such cake at $57 per ton f. o. b. cars at Greenville.

Garner also testified that he was familiar with the market value of the cotton seed cake on November 10 and 12, 1917, in Beaumont, Tex., and that the market value of the class of cake called for in the contract was $57.50, f. o. b. cars at Beaumont, Tex., on these dates. There was also introduced correspondence, invoices, drafts, etc., showing purchase of the cotton seed cake in question from the Texas Refining Company on November 12th for $57 per ton, f. o. b. the cars at Greenville and Mt. Pleasant, Tex.; Texas common points the same as Beaumont. There was also introduced in evidence a telegram from appellee, received by appellant on November 20, 1917, reading as follows:

"Following our conversation of last Sunday should we be able to give you four to six hundred tons guaranteed sound forty-two per cent. protein slab cake which should run forty-nine per cent. protein and fat at Port Arthur, Texas, at forty-six dollars per ton shipment November first ten days December sacked in Kolo bags, this in place of the five hundred tons we had sold you but had to cancel account of our fire you can have this milled and sacked in transit at about four dollars per ton we should think. Wire quick answer."

The manager of the Texas Refining Company at Greenville fully corroborated and confirmed the testimony of Garner with reference to the purchase of the cake from that concern, and as to the securing of an option, which was on November 10th, and the exercise of such option on November 12th, for $57 per ton, and also this witness testified that such was the market value of this kind and class of cake f. o. b. the cars at Beaumont, Tex., on said date.

Y. O. McAdams, appellee's president, and a witness for appellee, on the trial contradicted appellant's witness Garner in material respects as to what was said between those two in the telephone conversation on the 10th of November, and McAdams testified, in substance, that he did not tell Garner in that conversation that appellee could not or would not fill the contract for the sale and purchase of the cotton seed cake in question, but that he only told Garner that, owing to the fact that appellee's mill had been destroyed by fire, it would be impossible for appellee to comply with appellant's shipping instructions of November 3d and 6th; that witness did not tell Garner that appellee would not carry out the contract, and, in fact, that witness told Garner that he (witness) would see what he could do with reference to filling the contract, and would do the best that could be done in that direction. McAdams did not deny, however, Garner's testimony to the effect that he (McAdams) during the same conversation promised Garner that he would let him know definitely on that same day by wire what appellee would do with reference to filling this contract, and if he had contradicted Garner in this matter, as he did in other portions of Garner's testimony, it would not have warranted the court in taking the question from the jury by peremptory instruction, if appellant's evidence was sufficient to raise the issue that appellee, acting through McAdams, repudiated and renounced its liability under the contract and declined to fill the same, and appellant acted upon such repudiation promptly as it claims to have done.

[1] Appellant's first assignment of error complains of the peremptory instruction given by the court in appellee's favor, and contends that the case should have been submitted to the jury for its determination as to whether appellee breached the contract sued upon, etc. The proposition is as follows:

"Since the evidence would authorize a finding that, at the time plaintiff purchased the cake or meal in the open market, defendant had repudi-

ated the contract of purchase by declaring that he would not fulfill the same, and that the plaintiff acted upon such anticipatory breach, it was error for the court to peremptorily instruct the jury to find against the plaintiff upon this issue."

In support of its contention appellant cites the following authorities: Greenwall Theatrical Co. v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302; Kilgore v. N. W. Tex. Baptist Ed. Ass'n, 90 Tex. 139, 37 S. W. 598; Young v. Watson, 140 S. W. 840; Sup. Council Am. Leg. of Honor v. Batte, 34 Tex. Civ. App. 456, 79 S. W. 629; Sup. Council v. Gambati, 29 Tex. Civ. App. 80, 69 S. W. 114; Roehm v, Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; 3 Elliott on Contracts, § 2028; 9 Cyc. 641.

Appellee, as to the first counter proposition, makes the following:

"Since the uncontroverted evidence shows that there was no refusal on the part of appellee to comply with the contract, but, on the contrary, same was left open for future arrangements, the court properly peremptorily instructed the jury to find against the appellant."

In support of this counter proposition, appellee cites the following authorities: Swift & Co. v. Continental Oil & Cotton Co., 170 S. W. 114; Kilgore v. N. W. Tex. Baptist Society, 90 Tex. 139, 37 S. W. 598; United States v. Smoot, 15 Wall. 36, 21 L. Ed. 107; Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984; Benjamin on Sales, § 568.

All the cases cited by both parties go back to and announce as correct the rule in cases of this character as laid down by Benjamin on Sales in the section above referred to. Benjamin states the rule as follows:

"A mere assertion that the party will be unable or will refuse to perform his contract is not sufficient. It must be a distinct and unequivocal, absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made, for, if he afterwards continues to urge or demand compliance with the contract, it is plain that he does not understand it to be at an end."

In the Kilgore Case, cited by both parties, it was said:

"The evidence tends to show that, after the declarations of Kilgore were made, and the acts done by him upon which the abandonment was predicated, the officers of the corporation entreated with him and his sureties for a continuance of the work under the contract. If that be true, then it would operate as a waiver of the breach, which might have been claimed, if promptly accepted by the corporation."

And further in the same case:

"When the promisor is in good faith actively engaged in the performance of a contract, a declared intention to abandon it at some future time, however positively made, could not operate to terminate it, because he at the same time would by his act or performance be in a more emphatic manner affirming the existence of the contract and maintaining the terms thereof."

It must be borne in mind that in the Kilgore Case the promisor, notwithstanding his declarations that he intended to abandon his contract, and would do so, still at the very time of such declaration he was in the active performance of his contract, and the other party thereto continued to insist and urge him to continue the performance of his contract, and in that case the court applied the familiar maxim that "Actions speak louder than words," and held that Kilgore's declaration to the effect that he intended to abandon the contract, if made, were not sufficient to show a breach of the contract on his part in the face of the fact that he was then engaged in the active performance of his contract.

In Greenwall Theatrical Co. v. Markowitz, supra, the action was one by the plaintiff for anticipatory breach of contract, like the present case, and in that case the Supreme Court of this state, among other things, said:

"Before the time when defendant was bound to perform, it could not, by its renunciation of its obligation, put an end to the contract; but by its action it left the plaintiff at liberty, if he saw fit, to take it at its word, and treat its contract as a breach and the contract as thereby terminated, and hold the defendant responsible for the damages resulting."

We think that this case, considering the evidence adduced upon the trial, ought to be ruled by the Greenwall Theatrical Company Case just quoted from. According to the testimony of appellant's witness Garner, appellee's president, McAdams, stated to him emphatically, in the telephone conversation of November 10th, that appellee would not be able to fill the contract between the parties on account of the destruction of its mill plant by fire, and that appellee would cancel the contract, and that appellee considered that the contract was canceled by the fire; and if Garner's testimony be given credence, it would justify the conclusion by a jury that in said conversation appellee's president positively renounced any liability to fulfill the contract, and gave as a reason for its cancellation the destruction of its plant by fire. It is true Garner testified that in the same connection McAdams stated to him that he would let him know for sure by wire on that same evening what appellee would do about fulfilling the contract, and that Garner did not at the very time of such conversation act upon McAdams' statement that appellee would cancel the contract, or considered the contract canceled, but, in view of the promise on the part of McAdams to let appellee know for certain on the same evening whether it would change its mind and fulfill the contract, and in view of appellee's failure to comply with such promise, and in

view of all of the uncontradicted evidence on the part of appellant, that appellee refused to answer either of appellant's telegrams on the 12th of November, which telegrams are hereinbefore copied, we have reached the conclusion that the evidence in this case was such as to compel a submission by the trial court to the jury of the issue as to whether there was a breach of the contract in question by appellee.

In view of another trial of the case, we think it would hardly be proper to enter further into an argument showing the probative force of the evidence bearing upon this issue. We simply hold that the evidence was sufficient to carry the case to the jury on that question.

[2] On the further point—that is: Did appellant act promptly upon this anticipatory breach of contract, if there was such?—it is the contention of appellee that the evidence shows without contradiction that, even though there was a renunciation of the contract by appellee and a positive refusal to carry it out, still appellant did not promptly act upon such refusal or breach, but continued to urge performance of the contract by appellee, and thereby waived its right to declare a breach and hold appellee for the measure of damages sought to be recovered in this case.

It is true that appellant's witness Garner stated that he insisted, in the conversation by phone, that appellee carry out its contract with appellant; but it also appears, or at least it was left by the evidence as a question of fact for the jury to determine, that Garner, acting for appellant, had no intention of waiving appellant's rights under the contract, by reason of appellee's breach at that time, and from the fact that Garner, acting for appellant, waited until the evening of the 12th to determine whether appellee was going to comply with the contract, it does not follow, as a matter of law, that appellant did not act promptly in claiming the breach, and therefore this question was also one for the determination of the jury.

[3] The record discloses that there was some contention made by appellee's answer below to the effect that appellee would not be liable in this case because of the destruction of its mill plant by fire, in view of the provision of the contract as claimed by it, to the effect that it would not be liable for any damages caused by anything beyond its control. Even if that provision had been in the contract as finally closed between the parties, we are of the opinion that it could not avail appellee in this case, and that its plant was destroyed by fire after the contract was made would be no defense to appellant's cause of action as here asserted. This contention is not made by appellee in this court, as we understand it; but, if so, it would

have to be overruled, and we merely make these remarks on this point in view of another trial of the case.

It follows, from what we have said, that this court is of the opinion that the judgment of the trial court ought to be reversed, and the cause remanded; and it will be so ordered.

Reversed and remanded.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes