**FIRST NAT. BANK OF AMARILLO et al. v. RUSH et al. (No. 1727.)**

(Court of Civil Appeals of Texas. Amarillo. Jan. 5, 1921. Rehearing Denied Jan. 26, 1921.)

1. Joint adventures ⊸4(1)—Party guilty of anticipatory breach not relied on by other could take advantage of contract.

Where one party to a contract of partnership or joint venture for the purchase and sale of a certain tract of land to take effect in futuro did not accept the failure of the other party to perform, or his renunciation, as ending the contract, the contract continued to exist, and the other party, though in default originally, could take advantage of its provisions despite his anticipatory breach.

2. Appeal and error. ⊸930(3)—No presumption of finding by court on issue submitted or requested.

When the trial court has sought a finding of a jury on an issue, or has been requested in writing to submit an issue, it will not be presumed that the judge has so found the issue as to support a judgment, certainly not if the judgment should be contrary to the findings of the jury, even if the issue submitted or requested to be submitted is not as clear or as accurate as it should be.

3. Evidence ⊸353(1)—Book entries, contract, etc., considered in determining relation of parties.

In an action involving a contract whereby parties were to divide profits from the purchase and sale of certain land, the jury had the right to consider the book entries, the contract between the parties, deeds, deed of trust, releases, etc., in determining their true relation.

4. Payment ⊸41(2)—Money derived from fund will be applied to its relief.

Money derived from a particular source or fund will be applied to the relief of such fund.

5. Payment ⊸41(3)—Payment from proceeds of property must be applied on debt.

A payment from the proceeds of mortgaged property must be applied in payment of the mortgage debt.

6. Partnership ⊸181—Payment from firm fund could not be applied to individual liability of partner.

If payment to it was made out of a partnership fund, the creditor bank could not apply it to the individual liability of a partner.

7. Payment ⊸44—Creditor bank could not apply payment to subsequent debt.

The creditor may not apply a payment to a debt arising after payment, without an agreement or direction to such effect.

8. Partnership ⊸75—Firm member ordinarily not charged with interest on firm funds.

Ordinarily one partner will not be charged with interest for the benefit of the firm on funds belonging to it.

9. Trial ⊸203(1)—No necessity that court instruct there was no controversy as to admitted fact.

There was no necessity that the trial court should instruct the jury that there was no controversy on a particular matter, which fact was admitted.

10. Evidence ⊸104—Testimony of widow of former party as to number of children in family immaterial and possibly prejudicial.

In an action involving a contract whereby parties were to divide profits from purchase and sale of land, a widow as administratrix

⊸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

having been substituted for a defendant, her testimony that there were nine children in the family, etc., was immaterial and likely to arouse the sympathy of the jury.

**11. Evidence ⊜⚊151(2)—Testimony of intervening partner as to his intentions inadmissible.**

In an action involving a contract whereby the parties were to divide the profits arising from the purchase and sale of land, the intervener, one of the parties to the contract, was properly not permitted to state what his intentions were at the time the contract was made, etc.

**12. Evidence ⊜⚊471(2)—Conclusion of witness not admissible.**

Testimony which constituted a conclusion of the witness was inadmissible.

**13. Evidence ⊜⚊148—Testimony as to sum reached by use of adding machine admissible.**

In an action involving accounts, a witness was properly permitted to testify to the sum of certain checks and items which he used an adding machine to reach instead of calculating it himself.

**14. Witnesses ⊜⚊275(2)—Cross-examination of intervener proper.**

In an action involving a contract whereby parties were to divide the profits arising from the purchase and sale of land, testimony of one of the parties, an intervener, on cross-examination, that he refused to produce his books or to permit the other party to the contract access to them after the suit was begun, *held* admissible on the issues made by plaintiff bank and the intervener.

**15. Appeal and error ⊜⚊1060(2)—Side bar remarks of counsel to refractory witness not reversible error.**

Side bar remarks made by counsel in examining a witness who indicated a disposition not to answer directly the question asked *held* not reversible error.

**16. Witnesses ⊜⚊175(1)—Partner's explanation of item on memorandum introduced by administratrix of other partner should have been admitted.**

In an action involving a contract whereby the parties were to divide the profits arising from the purchase and sale of land, the action being by a bank against one of the parties, and the other intervening, the intervener's explanation of an item appearing on a memorandum introduced in evidence by the administratrix of the other party should have been admitted.

**17. Trial ⊜⚊115(4)—Counsel should not read memorandum to corroborate statement of party as to his entry therein.**

It was unnecessary to produce the memorandum book of a party in corroboration of his statement as to entry made therein, and the trial court should not have permitted counsel to read the memorandum book.

**18. Evidence ⊜⚊271(19)—Self-serving letter after litigation should have been excluded.**

A letter written by a defendant to plaintiff after the litigation arose, in its nature self-serving, should have been excluded.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by the First National Bank of Amarillo against J. W. Rush, Mamie Rush, as administratrix, being substituted as defendant, wherein W. H. Fuqua intervened. From judgment for defendant administratrix against plaintiff Bank, and in her favor against the intervener, etc., plaintiff Bank and the intervener appeal. Affirmed in part; reversed and remanded in part.

See, also, 213 S. W. 931.

Kimbrough, Underwood, Jackson & Simpson, Madden, Trulove, Ryburn & Pipkin, Miller & Guleke, and C. B. Reeder, all of Amarillo, and W. D. Wilson, of Spur, for appellants.

H. H. Cooper, of Houston, J. A. Stanford, of Waco, and Veale & Lumpkin, of Amarillo, for appellees.

HUFF, C. J. This is the second appeal of this case, and for a statement of the case on the original appeal reference is made to the report thereof in 210 S. W. 521, 160 S. W. 319. As originally instituted, it will be observed that the bank brought suit against J. W. Rush and wife on a note for $12,000 due the bank, with 10 per cent. interest and attorney's fees; that Rush pleaded, among other things, the payment of the note. W. H. Fuqua intervened in that suit and set up the fact that he and Rush were partners in the cattle business, and also were partners in the purchase of a section of land, in which last partnership Fuqua was to have two-thirds of the profits derived from the sale of that land and Rush one-third. Since the former appeal of the case J. W. Rush died, making a will, appointing his wife executrix, and she has also died, and their daughter, Mamie Rush, has been appointed administratrix of the estate of her father and mother, with will annexed, and makes herself a party defendant to the suit, adopting the answer filed originally by J. W. Rush. After the reversal of the case in the district court the bank amended its petition on March 23, 1920, setting up the execution of the note as theretofore pleaded, and alleging that J. W. and Mattie E. Rush had executed and delivered to it a certain deed of trust on 200 acres of land in the section mentioned in the pleadings; that thereafter, on the 10th of February, 1909, the original defendants desired to sell the 200 acres, and that the bank, to accommodate the defendants, executed and delivered a release of the deed of trust. In consideration thereof J. W. Rush indorsed and delivered certain notes described, which were six real estate mortgage bond notes, executed by one Gid Jowell, aggregating $20,000. It is alleged that all of said notes had been since sued upon in Swisher county, foreclosing a lien on the real estate given to secure the same and that the parties, by agreement, had since

---

⊜⚊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

placed in the hands of T. W. Tomlinson as trustee, the land which was bought in at the foreclosure sale, under the terms of the agreement between the parties. The Gid Jowell notes were shown to have been given for part of the land alleged to have been held under a partnership agreement, as theretofore set out, and that the notes were held in place of the deed of trust and mortgage on the land. The bank, by its amended petition, shows that J. W. Rush had an overdraft in the bank, and it seeks for a judgment on the overdraft. The administratrix, Mamie Rush, pleaded the statute of limitation as against this last cause of action on the overdraft. In this case at this time also the pleadings by the bank and by the intervener, Fuqua, set up the fact that Fuqua was a partner in the land transaction, and that he was liable for the partnership land account. The pleadings go into detail with reference to the manner in which the accounts were kept, which possibly will not be necessary on this appeal to set out more in detail. The case was tried to a jury on special issues as follows:

"Special issue No. 1: Did intervener, W. H. Fuqua, pay or on his individual responsibility procure the First National Bank of Amarillo to pay the entire $9,600 purchase price for said section No. 27, block W 1, Swisher county, Tex.?" The jury answered "No."

"Special issue No. 2: Did defendant, J. W. Rush, after he had executed and delivered the $12,000 note sued upon, recognize as valid and binding the contract made and entered into by and between him and intervener, W. H. Fuqua, on the 24th day of March, 1906?" The jury answered "Yes."

"Special issue No. 3: Did the said defendant, J. W. Rush, at the time he turned over to intervener, W. H. Fuqua, or to other officers of the plaintiff's bank, proceeds arising from the sale of part of said section of land, consent for said proceeds to be applied otherwise than on said $12,000 note?" The jury answered "No."

"Special issue No. 3, requested by defendant: At the time J. W. Rush delivered to W. H. Fuqua the proceeds of the sale of portions of the Adair section of land amounting in the aggregate to $12,750, did he, when he turned over said amount, instruct W. H. Fuqua to apply same on the $12,000 note?" Answer: "Yes."

"Special issue No. 6: Was the $12,000 note bearing date of March 24, 1906, executed for the purpose of covering the then existing overdraft in the name of J. W. Rush, on the books of the First National Bank?" The jury answered "No."

"Special issue No. 8: Was the $12,000 note, dated March 24, 1906, executed by J. W. Rush to apply as a credit on the J. W. Rush account?" The jury answered "Yes."

There were no issues submitted as to the cattle partnership between Rush and Fuqua. Upon the motion of defendant the trial court entered judgment in favor of the appellee against the bank and in favor of appellee against Fuqua on the cattle account for the sum of $333.82, and a judgment to the effect that there was no partnership existing between Fuqua and Rush on the land account. In this case it was admitted that there was a partnership existing between Fuqua and Rush in the purchase and sale of cattle. The terms of that contract will be noticed later on in the opinion. The facts also show that on the 24th day of March, 1906, Fuqua and Rush entered into a written agreement reciting that Rush had purchased a certain section of land situated in Swisher county, being section No. 27, block W 1, and sometimes known in the record as the Adair land, for the consideration of $9,600, being the purchase price of the land; that Fuqua was to furnish $9,600, or have it furnished; that Fuqua was to be paid back $9,600, so paid by him, without interest; and that he was to have two-thirds of the profits made on said section over and above the sum paid for it. The facts show substantially that Rush took the deed to the land in his name, and that he paid for the same by checking on the bank for the amount of the purchase price, and that the $12,000 note was given to cover the purchase money and either an overdraft or to give him credit in the bank over the purchase price of the land. To secure this note so executed Rush made a deed of trust on the land and also a deed of trust on a section of land in the name of his wife. He and his wife signed the deed of trust and also the note. A foreclosure was not sought on the land, but the Gid Jowell note, for which part of the land purchased was sold to Jowell, for $20,000, represented by his six notes mentioned in the pleading, was put up instead thereof as security to the $12,000 note. The other facts necessary to an understanding of the opinion will be noted as we consider the questions involved.

By the first assignment, as well as by several others, appellant bank, joined therein by Fuqua as intervener, insists that, under the findings of the jury in answer to issues Nos. 1 and 2, they, in effect, found a partnership existed in the land between Fuqua and Rush, and that the court erred in not so decreeing.

It is objected upon the part of appellee that the brief of the appellant bank cannot be considered on the issues between the intervener and appellee, as the bank only asserts error in the judgment in decreeing there was no partnership in the land, and since Fuqua, the intervener, only adopts the brief of the bank, without presenting an assignment of his own thereon, that we should disregard the assignments of the bank presenting the issue, as it could have no interest in the question. It probably is true that the intervener's brief is not strictly in accordance with the rules of briefing, but, as the bank and Fuqua have made a common cause on the issue, we believe it was unnecessary to repeat the assignments in the brief of both the bank and Fuqua, as the issue can be considered under the assignments as presented.

The contract upon which intervener and

the bank rely as establishing a partnership was one of which performance was to commence in the future. While by the terms of the writing itself the past tense is used, as 'that Rush had purchased the land and Fuqua had paid $9,600, the facts are the land purchase was not consummated, and Fuqua did not furnish the money. Under the contract, Fuqua was to receive back the money paid without interest out of the sale of the land before the profits were divided. The writing, when drawn, therefore, was applicable to a condition then in contemplation. If the condition did not then exist, or if the conditions never occurred, which were intended to be covered, the relation of partnership was not established, under the terms of the contract, after his failure to furnish the money. It was said by the Commission of Appeals upon the hearing of this case before that court:

"Notwithstanding the contract, read literally, shows an executed agreement, yet we think that, properly construed in the light of the evidence, it was purely executory; in other words, it was an agreement to be executed by the parties in the future."

It is further said in the opinion:

"If Fuqua, after agreeing to furnish the necessary money, failed to do so, that Rush had the right to treat the contract as abandoned by Fuqua, and thereafter Fuqua would not be entitled to recover any part of the profits."

[1] If Fuqua assumed to renounce the agreement on his part, he thereby, in so far as he was concerned, declared his intention to rescind the contract. This, however, did not amount to a rescission because one party cannot by himself rescind a contract, but by his failure to comply with its provision he entitled Rush, if he pleased, to put an end to the contract. Rush could have adopted such renunciation by so acting upon it as to declare in effect that he too treated the contract as at an end. He, however, had the right, if he saw proper, to treat Fuqua's failure to pay the money as inoperative and await the time when the contract was to be executed and hold him responsible for all the consequences for nonperformance. In such case Rush would have kept the contract alive for the benefit of Fuqua as well as his own. The finding of the jury on the first issue established that Fuqua did not furnish the purchase money for the land and procure the bank to pay the same upon his individual responsibility. In other words, he renounced the agreement. If Rush, by his acts, or conduct, accepted this renunciation, the partnership agreement was at an end. But by special issue No. 2 the jury found Rush, after executing the note, recognized as valid and binding the contract. From this finding it would appear Rush did not accept Fuqua's failure or renunciation as ending the contract. If he did not, then the partnership existed, and Fuqua could take advantage of its pro-

visions, even though he had been guilty of anticipatory breach. Bank v. Rush (Com. App.) 210 S. W. 521; Greenwall Theatrical Circuit Co. v. Markowitz, 97 Tex. 485, 79 S. W. 1069, 65 L. R. A. 302; Kilgore v. N. W. Texas Baptist, etc., 90 Tex. 139, 37 S. W. 598; Younger v. Welch's Ex'x, 22 Tex. 417; Wellington Railroad Committee v. Crawford (Com. App.) 216 S. W. 151; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Central Trust Co. v. Chicago, etc., 240 U. S. 581, 36 Sup. Ct. at page 414, 60 L. Ed. 811, L. R. A. 1917B, 580; Garner v. Beaumont, 212 S. W. 690; Texas Seed, etc., Co. v. Chicago Set, etc., Co., 187 S. W. 747 (6); Bost v. McCrea, 172 S. W. 561; 3 Elliott on Contracts, par. 2033, p. 213 et seq.; 9 Cyc. 635 (3) (d), 637; C. J. vol. 13, pars. 729, 730, p. 655, "Contracts." We have not determined that the second finding is in effect that Rush elected to hold Fuqua to his undertaking and did not intend to rescind, but it is not altogether clear that this was not the purpose of the jury so to find. The trial court, however, does not seem to have so interpreted the findings of the jury in rendering the judgment. There is such doubt as we conceive it, in the matter, that in our judgment a reversal on this point will be required.

[2, 3] It is insisted by appellee that the issues submitted and answered are immaterial and were not pleaded, and that the issues presented by the pleadings were whether the contract for a partnership was really executed, rescinded, or abandoned; that it should be presumed the court so found the facts as to sustain the judgment. The trial court sought by issue, it would seem, to find whether Fuqua renounced his obligation under the executory contract and whether Rush elected to accept such repudiation, or to treat the contract as valid and binding. By this method he sought to ascertain if in fact the partnership was continued. When the trial court has sought a finding of a jury on an issue, or where he has been requested in writing to submit an issue, it will not be presumed that the judge has so found the issue as to support a judgment, and certainly not if the judgment should be contrary to the findings of the jury. This, as we understand, is not changed, even if the issue submitted or requested to be submitted is not as clear or as accurate as it should be. San Antonio Public Service Co. v. Tracy, 221 S. W. 637; Benton v. Jones, 220 S. W. 193; Brady v. McCuistion, 210 S. W. 816. Without discussing special issues Nos. 6 and 8, we regard them as not submitting the ultimate fact, but they are only evidentiary in their nature. As to how the note was credited on the Rush account, or whether given as payment of an overdraft, under the issues they can be considered as of no value except as evidentiary facts to establish the main issue, whether or not there was an existing partnership in the land. The jury, as we conceive it, had a

right to consider all the evidence of the book entries, the contract, the deeds, the deed of trust, releases, etc., in determining the true relation of the parties. As we understand the issues, 6 and 8 are not controlling on the main issues sought to be established.

The sixth, seventh, and eighth assignments are to the effect that the court erred in applying to the note sued on the proceeds received from the sale of the land, and in effect that the payment should have been applied on the unsecured items of the Rush account. The findings of the jury are that Rush, at the time he turned over to Fuqua or to the officers of the bank the proceeds arising from the sale of parts of the land, did not consent for the proceeds to be applied other than on the $12,000 note, and that Rush instructed Fuqua to apply the amount of the sale, $12,750, on the note. It was alleged by both the bank and Fuqua that no instruction was received from Rush to apply the proceeds from the sale of the land, and the amount so received was credited to the Rush account. Their testimony is to that effect. Rush testified and pleaded that the proceeds received from the sale of the land, $12,750, as well as $2,500 paid by him over and above that amount, were turned over to the bank and Fuqua with instructions to apply the payments to the note. The auditor's report shows that the $12,750 received from the sale of the land upon which there was a deed of trust to secure the note overpaid it $155.77. The jury having found that Rush directed Fuqua and the officers of the bank to make the application, the note was paid as alleged by appellee, and appellant could not recover thereon. It was said by the Commission of Appeals in this case: If there was no partnership in the land transaction, "and Rush had instructed Fuqua or any other authorized officer. of the bank to credit the money and securities derived from the sale of the land on the note sued on, then such credit should be entered as of the date of the respective payments." The auditor in his report shows he entered the credits as above suggested by that court, and the result is as above stated. It was further held by that court on the former appeal, if there was a partnership in the land "and there were no instructions to pay upon any particular debt," then "the proceeds of the sale of the land should be credited on the indebtedness on the land transaction, whether evidenced by note or account."

[4, 5] It seems to be a general rule that money derived from a particular source or fund the court will apply to the relief of that fund. A payment from the proceeds of mortgaged property must be applied in payment of the mortgage debt. Howard v. Schwartz, 22 Tex. Civ. App. 400, 55 S. W. 348; Marshall v. Stowers, etc., 167 S. W. 230; Jenkins v. Morgan, 187 S. W. 1091; Lyon v. Bass, 76 Ark. 534, 89 S. W. 849; Eagle Drug Co. v. White, 182 S. W. 382. There can be no doubt

that the payment was from the proceeds of the sale of part of the mortgaged property, whether the land was held by Rush individually or for the partnership. The bank executed the release in order to make the sales and received the proceeds as the sales were made. The money had been obtained from the bank to purchase the land, and to secure the advance it required the note and a mortgage on the land to secure its payment. In this case the Rush account shows the money paid by the bank on his checks for a considerable period. If the items charged to him was partnership indebtedness, it, according to Fuqua, cannot be disputed that account was credited when the note was executed, and when it was paid it paid the partnership indebtedness therefor.

[6, 7] It follows, if this payment was out of the partnership fund, the bank could not apply it to the individual liability of Rush. If, however, this was the individual liability of Rush, the bank could not apply the payment to a debt arising after the payment is made without an agreement or direction to that effect. 30 Cyc. 1237, 1240, 1248. The cause of action on the individual items against Rush was barred by the statute of limitation, and the trial court, under the plea of appellee and the law, could not render judgment against the estate therefor. It will be unnecessary to go into an analysis of the account in order to determine how much Rush owed the bank individually. There is considerable diversity in the evidence and the contention of the parties as to the amount so due. As the bank could not get a judgment against Fuqua on the individual account of Rush, and as the partnership indebtedness to the bank is paid, we see no reason for reversing the judgment on this branch of the case. The judgment as between the bank and Rush estate should be affirmed.

On this appeal there seems to be a complaint that the judgment of the trial court was error in failing to give the bank a recovery against Fuqua. Fuqua is apparently willing that a judgment should be so rendered. If upon another trial the bank desires to take judgment, and Fuqua does not object thereto, or if there is a controversy between them, it is not the purpose of this opinion, in affirming the case between the bank and Rush estate, to affect any issue between the bank and Fuqua.

The twelfth to twenty-second assignments, inclusive, in the bank's brief and 1, 2, and 3 in the intervener's brief assail the judgment of the court in giving the Rush estate a recovery against Fuqua on the cattle partnership for the sum of $333.82, because, it is asserted, Fuqua did not receive any sum belonging to the cattle partnership or appropriate any of it. The trial court, in the judgment, recites that it was admitted that the cattle partnership existed between intervener Fuqua and Rush, and that it was the opin-

ion of the court that a judgment of dissolution should be issued and an accounting had thereon. The court, in his judgment, recites the amount of money that was advanced or obtained from the bank in the cattle business, and also recites the aggregate sum of the sales and profits in the cattle business; also the amount of money delivered to Fuqua and the appropriation of a certain amount of cattle by Rush in a land transaction, and charges Rush with interest on that sum of money, and the sale of the remnant of the cattle, amounting to $1,100, and charging him interest on that amount. He finds that the total profits of the cattle business was $6,694.13. He charges Rush with having received of that amount $3,013.25, and that intervener received the sum of $14,139.05 and, after reimbursing himself for the $10,458.17, has received the sum of $3,680.80 of the profits of the cattle business, and that he is entitled to pay to the said Rush the sum of $333.81. The contract of partnership in the cattle business provides that Fuqua should furnish the original capital stock to the partnership without interest. This contract further provided that all of the moneys received and all notes taken in payment of cattle were to be turned over to Fuqua, who should receipt the same and keep the same, collecting the notes as they fall due, until the termination of the contract. Fuqua kept the partnership account on the bank books, as is shown by the evidence, and the checks drawn by Rush in the cattle business were charged to this account, and interest was added to the account. One of the main objections of Fuqua to the judgment of the court is Fuqua admitted that he collected interest himself on the partnership notes, amounting to the sum of $720, and that the bank collected on such notes $994. We are of the opinion that Fuqua should account for the interest collected on partnership notes, whether collected personally by him or the bank. In depositing the amount in the bank it would appear that he made it his agent to do that which he was obligated to do in the partnership agreement, and in settlement the whole should be taken into consideration, and, if Fuqua had in his hands or his agent's hands more than his share, he should be charged with it. It is not our purpose, and we have not attempted, to give a full statement of the items which go to make up the court's conclusion. It would be an interminable task to set out these various items and show the calculations by which the court's judgment could be sustained, but we believe it to be sufficient to say that the trial court has made a reasonably fair settlement of these various transactions and is as near an adjustment of these complicated accounts as would possibly ever be reached by another trial, and we do not feel like disturbing his findings on that point. There being no dispute as to the partnership existing in the

cattle business, this question was not submitted to the jury, but was left for the determination of the trial court. We therefore think the judgment of the court as to the cattle account should be affirmed and be eliminated from further consideration in this case. There is, however, some complaint made by the bank and Fuqua that Rush was not charged enough interest on the money which went into some land and appears afterwards to have been sold at a profit and accounted for in the partnership transaction. We have not attempted to calculate the interest on these amounts, and under the facts of the case we are not sure that Rush should have been charged interest on the amount of cattle that was placed on the land transaction, and the court would have been justified in finding that he did not misappropriate the partnerhip funds to his individual use, but it was simply a sale for the benefit of the partnership.

[8] Ordinarily one partner will not be charged with interest for the benefit of the partnership on funds belonging to the partnership. As above suggested, we believe the trial court has reached substantial justice in the settlement of this particular account.

[9] The twenty-third assignment is overruled. There was no necessity of the court instructing the jury that there was no controversy as to the cattle partnership; that fact was admitted.

The twenty-fourth assignment will be overruled. The issues sought to be presented under this assignment were determined on the former appeals.

The twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, and thirty-first assignments are overruled for the reasons heretofore given in this opinion in the consideration of the first assignment. We think our views under the first assignment are sufficiently expressed upon the questions sought to be presented by these assignments.

[10] The thirty-second assignment of error, in which Mamie Rush testified that there were nine children in the family, five of them at home, four girls and one boy, children of the deceased J. W. Rush and wife. This testimony was immaterial and irrelevant and was likely to arouse the sympathy of the jury and should not have been admitted.

The thirty-third assignment of error will be overruled. The testimony sought to be introduced under this assignment we regard as wholly irrelevant to any controversy in this case.

The thirty-fourth assignment will be overruled. We think the testimony was admissible.

[11] The thirty-fifth assignment is overruled. We think Fuqua should not be permitted to state what his intentions were at the time the contract was made, etc.

[12] The thirty-sixth assignment does not

show reversible error. We think the effect of the testimony offered would have been a conclusion of the witness and was not admissible.

The thirty-seventh assignment, we think, shows no reversible error in excluding the testimony offered.

[13] We think the thirty-eighth assignment shows no reversible error. This method was simply to use an adding machine to get the sum of certain checks and items, and we see no more reason why that amount could not be obtained in that way than having the witness himself to make the calculation and announce the result.

The thirty-ninth assignment of error will be overruled.

The fortieth assignment is also overruled. We think the testimony is not admissible.

We believe the forty-first assignment presents no reversible error. We think the statement in connection with Rush's testimony was admissible.

[14] The forty-second and forty-fourth assignments will be overruled. The testimony sought to be elicited from the intervener on cross-examination was to the effect that Fuqua refused to produce his books or to permit Rush access to them after the suit was begun. The testimony of Fuqua and parties in the bank indicate that Rush had access to the books and had examined them repeatedly. Rush contended that he was ignorant as to the manner in which the books were kept, etc. We believe this testimony was properly admissible on cross-examination of the witness with reference to these matters. The Supreme Court in a mandamus proceeding of Rush v. Browning, 103 Tex. 649, 132 S. W. 763, held in the case that Rush was entitled to an examination of these books; and under the issues made by the bank and the intervener we think this was a proper cross-examination.

[15] The forty-third assignment, we think, presents no reversible error. There were certain side bar remarks made by counsel that should have been avoided. However, the witness, on the record made, indicated a disposition not to answer directly the question asked. This matter should be avoided on another trial, but we are not disposed to reverse the case on the proceedings had as presented by the bill.

We think there was no error shown under the forty-fifth, forty-sixth, or forty-seventh assignments, and the same will be overruled.

[16] The forty-eighth assignment, we believe, shows error in the ruling of the court in excluding Fuqua's explanation of a $4,000 item that appears to have been on the memorandum introduced in evidence by the appellee, of which complaint was made under the forty-first assignment of error. The court should have permitted the witness to answer or give his explanation.

There is no reversible error shown by the forty-ninth assignment. However, the question asked the witness should not be repeated upon another trial.

The fiftieth assignment, we think, shows no error. The question asked Fuqua we regard as proper under cross-examination under the peculiar facts of this case.

The fifty-first and fifty-second assignments are overruled.

[17] The fifty-third assignment, we think, shows no prejudical error. However, it was unnecessary to produce the memorandum book of Rush in corroboration of his statement as to the entry made therein. We believe the court should not have permitted counsel to read the memorandum on the book.

The fifty-fourth assignment will be overruled.

[18] The fifty-fifth assignment of error, we think, should be sustained. The letter offered and received in evidence was written by Rush to the bank after the litigation arose and was in its nature self-serving.

For the same reason we sustain the fifty-sixth assignment of error.

The fifty-seventh assignment of error, as to Mrs. Harrell's testimony about the death of the father and mother and the number of children, will also be sustained. This testimony was irrelevant and liable to prejudice the jury.

We believe the fifty-eighth assignment should also be sustained as to the introduction of the letters therein mentioned.

The fifty-ninth and sixtieth assignments will be overruled. The testimony there elicited and offered was proper cross-examination.

The sixty-first assignment shows no error. The order of argument, we think, was within the discretion of the court.

The sixty-second, sixty-third, sixty-fourth, sixty-fifth, sixty-sixth, and sixty-seventh assignments will be overruled for the reason first given in this opinion.

We believe the judgment of the trial court that the bank take nothing against the Rush estate and his judgment settling the cattle partnership account as heretofore indicated should be affirmed, but that the judgment with reference to the land partnership and the issues thereunder should be reversed, and remanded for a new trial.

Affirmed in part, and reversed and remanded in part.